# United States Court of Appeals

## For the First Circuit

No. 03-1901

UNITED STATES OF AMERICA ex rel. JOHN C. KARVELAS,

Plaintiffs, Appellant,

v.

MELROSE-WAKEFIELD HOSPITAL; MELROSE-WAKEFIELD HEALTHCARE
CORPORATION; HALLMARK HEALTH SYSTEM, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lipez, Circuit Judge,
Coffin, Senior Circuit Judge,
and Barbadoro,* District Judge.

Oliver B. Dickins with whom John F. Murphy was on the brief
for appellant.
Michael K. Fee with whom Ropes & Gray LLP were on the brief
for appellees.

February 23, 2004

_____
    * Of the District of New Hampshire, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>.  Plaintiff John C. Karvelas brought this qui tam action against defendants Melrose-Wakefield Hospital, Melrose-Wakefield Healthcare Corporation, and Hallmark Health System, Inc., alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, <u>et seq.</u>  The district court granted the defendants' motion to dismiss the action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  On appeal, Karvelas complains that the court wrongly applied the particularity pleading requirements of Fed. R. Civ. P. 9(b) for averments in fraud to this FCA case.  He further argues that the court wrongfully dismissed his claim of retaliation by the defendants for conduct protected by the FCA.  After examining the issues raised by this appeal, some of which have not been addressed before in this circuit, we affirm.

## I.

John C. Karvelas was employed as a respiratory therapist at the Melrose-Wakefield Hospital in Melrose, Massachusetts, from 1982 until January 1997.  He claims that from 1994 until the termination of his employment at the hospital in 1997, the defendants knowingly submitted false claims to the United States government in order to obtain Medicare and Medicaid payments, in violation of the False Claims Act.  In essence, Karvelas alleges that Melrose-Wakefield Hospital and its parent corporations failed to comply with federal standards for patient care as required by

the Health Care Financing Administration ("HCFA")[1] for Medicare and Medicaid reimbursement. He claims that the defendants falsely certified that they were in compliance with these standards and "wrongfully billed Medicare and/or Medicaid," presumably on the basis of services that were being provided improperly or not at all. Karvelas further claims that he was discharged in retaliation for his investigation of the defendants' noncompliance with regulatory standards and violations of the FCA.

On April 6, 2001, Karvelas filed the present qui tam action against the defendants in the United States District Court for the District of Massachusetts.[2] On May 3, 2002, the United States gave notice that it did not intend to intervene in the case. The district court then ordered the complaint unsealed and authorized service on the defendants. The defendants subsequently moved to dismiss the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The district court granted the motion and dismissed the case with prejudice, ruling that Karvelas had not met the requirement under Fed. R. Civ. P. 9(b) that allegations of

---

[1]The Health Care Financing Administration became the Centers for Medicare and Medicaid Services ("CMS") on June 1, 2001.

[2]This was the second federal lawsuit that Karvelas has initiated against the defendants in connection with their alleged fraudulent activities. His first complaint, which was filed in May 2000, alleged essentially the same retaliation claim pleaded in this case, as well as various state law claims. The district court dismissed the action, without prejudice, for failure to state a claim. Karvelas v. Melrose-Wakefield Hospital, Civ. No. 00-10991 (D. Mass. May 5, 2000).

fraud be stated with particularity.[3]  It further held that Karvelas had failed to allege facts sufficient to state a claim for False Claims Act retaliation.[4]  This appeal followed.

**II.**

**A.    Standard of Review**

We review de novo the district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Morales-Villalobos v. Garcia-Llorens, 316 F.3d 51, 52 (1st Cir. 2003).  We accept the plaintiff's well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  Doran v. Mass. Turnpike Auth., 348 F.3d 315, 318 (1st Cir. 2003).  However, we reject claims that are made in the complaint if they are "bald assertions" or "unsupportable conclusions."  Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002).  Our objective is "to determine whether the complaint . . . alleges facts sufficient to make out a cognizable claim."  Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002).  In making this determination, we may affirm on any independently sufficient basis.  Id.

_____

[3]The court noted that the judgment was without prejudice to any claim that the federal government could have raised in the action, explaining that the government "remains free to exercise its discretion and judgment regarding its own litigation posture with respect to matters related to or suggested by claims the plaintiff ha[d] unsuccessfully presented to this court."

[4]The district court also dismissed Count V of Karvelas's complaint alleging violations of the Racketeer Influenced and Corrupt Organization (RICO) statute, 18 U.S.C. § 1961, et seq. Karvelas does not appeal the dismissal of this claim.

## B.   The False Claims Act

The False Claims Act, 31 U.S.C. § 3729 et seq., prohibits the submission of false or fraudulent claims to the federal government. The statute was first adopted during the Civil War in response to widespread fraud in wartime defense contracts. See Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 781 (2000). Its "qui tam"[5] provisions authorized private individuals to sue on behalf of the federal government and were intended to aid the government in discovering fraud and abuse "by unleashing a posse of ad hoc deputies to uncover and prosecute frauds against the government." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)(citation and internal quotation marks omitted).[6]

The most recent amendments to the FCA, passed in 1986, see S. Rep. No. 345, 99th Cong., 2d Sess., at 2 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, were intended to encourage the filing of

---

[5]"'Qui tam' is an abbreviation for *qui tam pro domino rege quam pro seipso*, which literally means 'he who as much for the king as for himself.'" United States ex rel. S. Prawer & Co. v. Fleet Bank, 24 F.3d 320, 324 n.7 (1st Cir. 1994) (citation omitted). Qui tam provisions first became popular in thirteenth century England. They permitted private individuals to bring suit on behalf of the King and served as a supplement to official law enforcement. Id.

[6]The historical background of the False Claims Act and its subsequent amendments has been described in detail by this and other courts. See, e.g., Prawer, 24 F.3d at 324-26; United States ex rel. Springfield Terminal Ry Co. v. Quinn, 14 F.3d 645, 646, 649-51 (D.C. Cir. 1994); United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1496-98 (11th Cir. 1991); United States ex rel. Stinson, Lyons, Gerlin & Bustamante v. Prudential Ins. Co., 944 F.2d 1149, 1153-54 (3d Cir. 1991).

private qui tam actions, yet also included provisions designed to prevent "parasitic" lawsuits, in which "relators, rather than bringing to light independently-discovered information of fraud, simply feed off of previous disclosures of . . . fraud [against the government]." United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1347 (4th Cir. 1994). The amendments thus represent the latest chapter in a long history of "'repeated congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior.'" Prawer, 24 F.3d at 326 (quoting Quinn, 14 F.3d at 651).

The FCA imposes liability upon persons who 1) present or cause to be presented to the United States government, a claim for approval or payment, where 2) that claim is false or fraudulent, and 3) the action was undertaken "knowingly," in other words, with actual knowledge of the falsity of the information contained in the claim, or in deliberate ignorance or reckless disregard of the truth or falsity of that information. 31 U.S.C. § 3729(a)(1), (b). The statute does not require proof of specific intent, that is, intent to present false or fraudulent claims to the government. Id. § 3729(b) (stating that "no proof of specific intent to defraud is required" to prove liability under the FCA). The statute further prohibits "conspir[acies] to defraud the Government by citing a false or fraudulent claim allowed or paid." Id. § 3729(a)(3). Individuals who violate the FCA are liable for civil

penalties and double or treble damages plus the costs incurred in bringing the FCA lawsuit. <u>Id.</u> § 3729(a).

Not all fraudulent conduct gives rise to liability under the FCA. "[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" <u>United States</u> v. <u>Rivera</u>, 55 F.3d 703, 709 (1st Cir. 1995). Evidence of an actual false claim is "the <u>sine qua non</u> of a False Claims Act violation." <u>United States ex rel. Clausen</u> v. <u>Lab. Corp. of Am., Inc.</u>, 290 F.3d 1301, 1311 (11th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1105 (2003). Therefore, a defendant violates the FCA only when he or she has presented to the government a false or fraudulent claim, defined as "any request or demand . . . for money or property" where the government provides or will reimburse any part of the money or property requested. 31 U.S.C. § 3729(c); <u>see also</u> <u>Harrison</u>, 176 F.3d at 785 ("[T]he False Claims Act at least requires the presence of a claim – a call upon the government fisc – for liability to attach.").

As noted above, the FCA's qui tam provisions allow a private individual or "relator"[7] to file a lawsuit alleging FCA violations on behalf of the United States. 31 U.S.C. § 3730. An FCA qui tam action may not be based on publicly disclosed information unless the relator is the original source of that

---

[7]A "relator" is "[a] party in interest who is permitted to institute a proceeding in the name of the People or the Attorney General when the right to sue resides solely in that official." <u>Black's Law Dictionary</u> 1289 (6th ed. 1990).

-7-

information.  Id. § 3730(e)(4)(a).  The relator must first serve his or her complaint upon the government, where it remains under seal for sixty days.  Id. § 3730(b)(2).  If the government elects to intervene, it takes over the suit and adopts any or all of the allegations contained in the qui tam complaint, in which case the relator is entitled to 15-25 percent of any proceeds recovered.  Id. § 3730(c)(1), (d)(1).  If the government does not exercise its right to intervene in the suit, the relator may serve the complaint upon the defendant and proceed with the action.  Id. § 3730(b)(2), (b)(4)(B), (c)(3).  If the relator succeeds in recovering funds for the government, he or she is entitled to 25-30 percent of the recovery.  Id. § 3730(d)(2).

## C.    **Failure to Plead Fraud with Particularity**

We must consider whether the district court erred in dismissing Karvelas's complaint on the ground that it failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Karvelas claims that a complaint stating a violation of the False Claims Act need not comply with Rule 9(b).  He argues in the alternative that Rule 9(b)'s particularity requirements should be relaxed in his case.  Finally, Karvelas claims that even if we do not relax these requirements, his complaint alleges fraud with sufficient particularity to satisfy Rule 9(b).  After first describing generally the requirements of Rule 9(b), we address each of these arguments in turn.

## 1. Federal Rule of Civil Procedure 9(b)

Under the general pleading requirements of the Federal Rules of Civil Procedure, a federal civil complaint need only state "a short and plain statement of the claim showing that the plaintiff is entitled to relief." Fed. R. Civ. P. 8(a). However, the federal rules recognize limited exceptions to Rule 8(a)'s simplified pleading standard. For example, claims of fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally."

We have said that Rule 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations. Arruda, 310 F.3d at 18-19. The purpose of this requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

We have recognized that, under Rule 9(b), a plaintiff may make allegations of fraud on the basis of personal knowledge or on "information and belief." New England Data Services, Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987). Hence, such

-9-

"information and belief" allegations remain subject to the particularity requirements of Rule 9(b). Moreover, allegations of fraud made on information and belief are also subject to the additional requirement that "the complaint set[] forth the facts on which the belief is founded." Id.; see also In re. Cabletron Sys., Inc., 311 F.3d 11, 28 (1st Cir. 2002) (noting that "this circuit imposed a strict requirement [on security fraud allegations based on information and belief] under 9(b) before enactment of the PSLRA [Private Securities Litigation Reform Act]")(citing Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991) ("Where allegations of fraud are . . . based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief.") (superceded by statute)).[8]

## 2. Applicability of Federal Rule of Civil Procedure 9(b) to the FCA

Karvelas argues that the district court erred in granting the defendants' Rule 12(b)(6) motion because a complaint that alleges a violation of the FCA need not comply with Fed. R. Civ. P. 9(b)'s requirement that "in all averments of fraud . . . the

_____

[8]In Langadinos v. American Airlines, Inc., 199 F.3d 68, 73 & n.8 (1st Cir. 2000), we noted that while "a plaintiff can make allegations either on the basis of personal knowledge or on 'information and belief,'" there is an "exception . . . in cases where the tougher pleading standards of Fed. R. Civ. P. 9(b) replace the more liberal requirements of Fed. R. Civ. P. 8." To the extent that this language suggests that information and belief pleading is impermissible under Rule 9(b), it is dicta and it is inaccurate. Information and belief pleading is permissible, subject to Rule 9(b)'s particularity requirement and the additional requirement that pleadings on information and belief set forth the facts on which that belief is founded.

-10-

circumstances constituting fraud . . . shall be stated with particularity." He claims that the district court should have applied the more lenient general pleading standard of Fed. R. Civ. P. 8(a).

In support of his theory that Rule 9(b) does not apply to the FCA, Karvelas cites the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), which held that employment discrimination claims are not subject to a heightened pleading standard. Karvelas's reliance on Swierkiewicz is misplaced. It is true that the Court held in Swierkiewicz that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." Id. at 513. However, it expressly noted that one such exception is Rule 9(b), which "provides for greater particularity in all averments of fraud or mistake." Id. (emphasis added); see also Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993) (noting that Rule 9(b) imposes a particularity requirement on the pleading of fraud or mistake).

We do not agree with Karvelas that "the False Claims Act is not a 'fraud' statute" and therefore does not fall within the scope of Rule 9(b). Section 3729(a)(1) of the FCA imposes civil penalties when a person knowingly presents or causes to be presented to the government "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). Section 3729(a)(3)

prohibits any conspiracy "to defraud the Government by getting a false or fraudulent claim allowed or paid." Id. § 3729(a)(3).

The legislative history of the 1986 FCA Amendments and the Supreme Court's interpretations of the statute further support the conclusion that FCA claims involve "averments of fraud" that must be pled with particularity under Rule 9(b). See, e.g., Vt. Agency of Natural Res., 529 U.S. at 781 n.10 (noting "the unobjectional proposition . . . that the FCA was intended to cover all types of fraud") (emphasis in the original); United States v. Neifert-White Co., 390 U.S. 228, 233 (1968)("[The FCA] protect[s] the funds and property of the Government from fraudulent claims")(citation and internal quotation marks omitted); United States v. Bornstein, 423 U.S. 303, 309 (1976) (explaining that the FCA was originally enacted to stop "the massive frauds perpetrated by large contractors during the Civil War"); S. Rep. No. 99-345, at 6, reprinted in 1986 U.S.C.C.A.N. at 5271 (describing the FCA as "a civil remedy designed to make the Government whole for fraud losses"). In short, "[i]t is self-evident that the FCA is an anti-fraud statute." Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476 (2d Cir. 1995).

Moreover, we reject Karvelas's argument that the False Claims Act is not a "fraud" statute because, under the statute, "liability depends on the defendant's knowledge, not on his fraud," and therefore only the second clause of Rule 9(b), which allows knowledge of fraud to be averred generally, applies. Under the

-12-

FCA, liability depends upon the defendant's act (presentation of a false or fraudulent claim to the United States government) and mental state (knowledge, or deliberate ignorance or reckless disregard of the truth or falsity of the information presented). That Rule 9(b) allows "[m]alice, intent, knowledge, and other condition of mind of a person [to be] averred generally" does not mean that particularity requirements do not apply to FCA claims. Rather, it simply means that a qui tam relator need not plead with particularity allegations concerning defendants' knowledge, reckless disregard, or deliberate ignorance of the submission of false claims. The characterization of a state of mind, after all, does not lend itself to detailed pleading. On the other hand, the details of the actual presentation of false or fraudulent claims to the government can and must be pled with particularity in order to meet the requirements of Rule 9(b).

Finally, every circuit court that has addressed this issue has concluded that the heightened pleading requirements of Rule 9(b) apply to claims brought under the FCA. See Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 562-63 (6th Cir. 2003); United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1308-09 (11th Cir. 2002), cert. denied, 537 U.S. 1105 (2003); United States ex rel. Totten v. Bombardier Corp., 286 F.3d 542, 551-52 (D.C. Cir. 2002); Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783-84 (4th Cir. 1999); United States ex rel. LaCorte

-13-

v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 234 (3d Cir. 1998); United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997); Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995); see also John T. Boese, Civil False Claims and Qui Tam Actions § 5.04 (2d ed. 2000 & Supp. 2003)("It is widely accepted by courts that because the essence of a False Claims Act is fraud, Rule 9(b) applies to FCA cases. . . . The applicability of Rule 9(b) to qui tam actions is by now beyond dispute."). For the reasons discussed above, we now join this consensus and hold that Rule 9(b) applies to claims under the FCA. Thus, the district court did not err in requiring Karvelas to plead with particularity the defendants' alleged violations of the FCA.

### 3. Relaxation of Rule 9(b)'s Particularity Requirements

Karvelas argues that even if Rule 9(b) applies to FCA claims, its requirements should be relaxed in his case because the information necessary to plead with particularity is within the possession and control of the defendants. There is some confusion about the meaning of a "relaxed rule of pleading" under Rule 9(b). At times, Karvelas seems to equate a relaxed rule of pleading with pleading on information and belief. The district court, citing the Fifth Circuit's decision in Thompson, 125 F.3d at 903, stated that the effect of a relaxed Rule 9(b) standard is that "fraud may be pled on information and belief." Other courts have adopted this understanding of what it means to relax 9(b)'s pleading

-14-

requirements.  See, e.g., Clausen, 290 F.3d at 1314; United States ex rel. Russell v. Epic Healthcare, 193 F.3d 304, 308 (5th Cir. 1999).  However, as we have already explained, see Part II. c.1 supra, we subject "information and belief" pleading under Rule 9(b) to particularity requirements.  There is, in other words, no relaxation of the particularity requirement for "information and belief" pleading.  Instead, when we refer to the relaxation of Rule 9(b)'s particularity requirements, we refer to an opportunity for the plaintiff to plead generally at the outset and then later amend the complaint, filling in the blanks through discovery.  That is the meaning of a relaxed Rule 9(b) standard that we apply here.

For example, we have said that Rule 9(b) pleading standards may be relaxed, in an appropriate case, "when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion."  Boston & Maine Corp. v. Hampton, 987 F.2d 855, 866 (1st Cir. 1993).  In such cases, "even for a plaintiff's allegations of fraud, if the facts would be peculiarly within the defendants' control, a court may allow some discovery before requiring that plaintiff plead individual acts of fraud with particularity."  Id. (citation and internal quotation marks omitted).

Whether discovery is warranted to correct general pleadings that do not initially meet the requirements of Rule 9(b) may turn on the nature of the statute under which the plaintiff's cause of action arises.  For example, we have relaxed Rule 9(b)'s

-15-

pleading requirements pending further discovery for allegations of mail and wire fraud pursuant to the Racketeer Influenced and Corrupt Organizations Act "because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts." New England Data Servs., 829 F.2d at 290-91.[9]  See North Bridge Assoc., Inc. v. Boldt, 274 F.3d 38, 44 (1st Cir. 2001)(noting that in the RICO context, where "the specific information [concerning the defendants' use of interstate mail or telecommunications facilities] is likely in the exclusive control of the defendant, the court should make a second determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint")(quoting Feinstein v. Resolution Trust Corp., 942 F.2d 34, 43 (1st Cir. 1991)).  We have not, however, had occasion to consider whether this relaxation of Rule 9(b)'s pleading requirements should be extended to cases arising under the False Claims Act.

---

[9]On the other hand, prior to the enactment of the Private Securities Litigation Reform Act, we strictly applied Rule 9(b)'s pleading requirements in securities fraud cases even when the fraud related to matters peculiarly within the knowledge of the defendants because of our concern that "a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement." Id. at 288; see also Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (in a securities fraud case, Rule 9(b) "does not permit a complainant to file suit first, and subsequently to search for a cause of action")(citation and quotation marks omitted).

Although some courts have recognized in theory that the particularity requirements of Rule 9(b) may be relaxed in an FCA qui tam action where the information relevant to the fraud is "'peculiarly within the perpetrator's knowledge,'" United States ex rel. Doe v. Dow Chem. Co., 343 F.3d 325, 330 (5th Cir. 2003) (quoting Russell, 193 F.3d at 308), few courts have actually applied a relaxed Rule 9(b) standard to an FCA qui tam action. See Boese, Civil False Claims and Qui Tam Actions, § 5.04[D] (noting that "[r]arely some courts will grant qui tam relators 'additional leeway' under Rule 9(b) when information is exclusively in the hands of the defendant").[10] The district court, quoting the Fifth Circuit's opinion in Russell, 193 F.3d at 308, refused to apply any version of a relaxed standard in this case because "documents containing the requisite information [were] possessed by other entities, such as the Healthcare Financing Administration." This reasoning apparently assumes that where the required information is in the hands of the government, a relator can gain access to those documents and fill in the blanks on that basis. See Clausen, 290

---

[10] For the rare cases, see, for example, Wilkins ex rel. United States v. Ohio, 885 F. Supp. 1055 (S.D. Ohio 1995)(holding that relator's failure to meet the particularity requirements of Rule 9(b) did not bar his claim where the relator was a former employee of the defendants and lacked access to records and documents in the possession of the defendants that contained information necessary to plead with particularity); United States ex rel. Kozhukh v. Constellation Tech. Corp., 64 F. Supp. 2d 1239 (M.D. Fla. 1999)(same).

F.3d at 1314 n.25 (refusing to apply a more lenient pleading standard to relator's allegations of fraud because the government had access to the relevant information and the relator was "not without avenues for obtaining [that] information").

However, as Karvelas correctly notes, every FCA qui tam action involves allegations of false or fraudulent claims submitted to the government. In many of these cases, the information needed to fill the gaps of an inadequately pleaded complaint will be in the government's hands. In addition, if the relator seeks to obtain the requisite information from the government, for example by submitting a request under the Freedom of Information Act (FOIA), he or she may encounter Section 3730(e)(4) of the FCA, which prohibits qui tam actions based upon publicly disclosed allegations unless the relator is an "original source" of that information. 31 U.S.C. § 3730(e)(4)(B); see, e.g. United States ex rel. Mistick PBT v. Housing Auth., 186 F.3d 376, 383 (3d Cir. 1999)(agency report prepared in response to a FOIA request is based upon publicly disclosed information for FCA purposes), cert. denied, 529 U.S. 1018 (2000); United States v. A.D. Roe Co., 186 F.3d 717, 723-24 (6th Cir. 1999) (information received pursuant to a FOIA request is publicly disclosed); United States ex rel. Lamers v. City of Green Bay, 998 F. Supp. 971, 979-80 (E.D. Wis. 1998) (same), aff'd 168 F.3d 1013 (7th Cir. 1999). The FCA defines "original source" as someone "who has direct and independent knowledge of the information on which the allegations are based,"

-18-

31 U.S.C. § 3730(e)(4)(B). This language excludes individuals who must rely upon information already in the possession of the government to adequately state their claim. Thus, Karvelas's argument for a relaxed pleading standard because the information he needs to plead with particularity is in the possession and control of the defendants cannot be answered by the court's suggestion that he could have obtained that information from the government prior to filing his complaint.

Nonetheless, we do not agree with Karvelas that "it is inherently inconsistent with the goals of the False Claims Act" to require a qui tam relator to specify "the time, dates, places, and identities" of the individuals involved in the fraud or "the specifics in the documents prepared and submitted by the defendant to obtain the funding" at the time that the complaint is filed and prior to any additional discovery.[11] The False Claims Act requires a qui tam relator to serve on the government "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses." 31 U.S.C. §

---

[11]Contrary to Karvelas's suggestion on appeal, the district court did not hold that Rule 9(b) required the production of actual documentation. The court's occasional references to the absence of actual documents do not suggest that the court "refused to consider any documents referred to in the complaint because Karvelas failed to produce them." Nor did the district court's "insistence that the qui tam relator has to plead fraud with particularity mean [] that the relator must plead the particulars of each document to which reference is made." Rather, as the district court correctly recognized, Karvelas was required to describe with particularity some of the documents containing false claims for payment that the defendants allegedly submitted to the United States.

3730(b)(2). The complaint is filed in camera and remains under seal for 60 days during which time the government considers whether to intervene. Id. As a leading commentator has suggested, allowing a qui tam relator to amend his or her complaint after conducting further discovery would mean that "the government will have been compelled to decide whether or not to intervene absent complete information about the relator's cause of action." Boese, Civil False Claims and Qui Tam Actions § 4.04[C].[12] Thus, allowing a relator to plead generally at the outset and amend the complaint at the 12(b)(6) stage after discovery would be at odds with the FCA's procedures for filing a qui tam action and its protections for the government (which is, of course, the real party in interest in a qui tam action).

Other courts have repeatedly refused to allow qui tam relators to rely on later discovery to comply with Rule 9(b)'s pleading requirements. See, e.g., Clausen, 290 F.3d at 1313 n.24. (noting that allowing a plaintiff "to learn the complaint's bare essentials through discovery . . . may needlessly harm a defendant['s] goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [contains] baseless allegations used to extract settlements");

---

[12] Although the government may intervene later in the litigation, "such intervention is not mandatory. . . . Moreover, while it may intervene, the government will no longer have an opportunity to conduct a confidential and unhurried investigation of the new claims in the amended complaint." Id. at § 4.04[C].

<u>Russell</u>, 193 F.3d at 308 (holding that "a special relaxing of Rule 9(b) is a <u>qui tam</u> plaintiff's ticket to the discovery process that the statute itself does not contemplate").  The reluctance  of courts to permit qui tam relators to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a qui tam plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as "a pretext to uncover unknown wrongs."  <u>United States ex rel. Robinson</u> v. <u>Northrop Corp.</u>, 149 F.R.D. 142 (N.D. Ill. 1993) (noting Rule 9(b)'s discouragement of pre-textual claims in rejecting special 9(b) treatment of a qui tam plaintiff).[13]  In light of the prevailing precedent and the procedures for filing and serving a qui tam complaint under 31 U.S.C. § 3730(b)(2) (providing for service on the government), we hold that a qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery.[14]

---

[13] This requirement also applies where the complaint refers to "a regularly-filed document prepared by the defendants."  We disagree with Karvelas that such documents are excepted from Rule 9(b)'s heightened pleading standard.

[14]In a final variant of his claim for relaxation, Karvelas asserts that the district court should have applied a relaxed Rule 9(b) standard because the defendants' alleged fraudulent schemes were complex and occurred over a period of several years.  While we have not adopted such an exception to Rule 9(b)'s pleading requirements, a few courts have found that a relaxed standard may apply to FCA qui tam complaints where the alleged conduct took place over a long period of time or involved numerous occurrences.  <u>See</u>, <u>e.g.</u>, <u>United States ex rel. Butler</u> v. <u>Magellan Health Servs.</u>, Inc., 74 F. Supp. 2d 1201, 1215 (M.D. Fla. 1999); <u>United States ex rel. Thompson</u> v. <u>Columbia/HCA Healthcare</u>, 20 F. Supp. 2d 1017, 1039

### 4. The Compatability of Karvelas's Complaint with Rule 9(b)

Applying Rule 9(b) to Karvelas's complaint, the district court concluded that Karvelas failed to "state with specificity what the precise [false] claims were" or to "provide specifics regarding the documents submitted to HCFA to make the false claims." After carefully analyzing the sixteen "schemes" that Karvelas described in his 93-page complaint, the court found that he had failed in each to "allege violations of the False Claims Act sufficiently to meet his Rule 9(b) obligation." Similarly, the court held that the complaint failed to "provide reference to actual documentation" of the false claims that allegedly had been filed with the government.

As we have emphasized, liability under the False Claims Act requires a false claim. See Rivera, 55 F.3d at 709. Therefore, the defendant's presentation of false or fraudulent claims to the government is a central element of every False Claims Act case. A health care provider's violation of government regulations or engagement in private fraudulent schemes does not

---

(S.D. Tex. 1998). Although we do not preclude the possibility of such an exception in a future case, we do not think that three years presents an exceptionally long period of time. Nor do we find any basis in the history or requirements of the FCA, or in most of the precedents, for relieving Karvelas of his burden of pleading fraud with particularity because he chose to allege sixteen complex schemes. See Yuhasz, 341 F. 3d at 564 ("[A] plaintiff should not be able to avoid the specificity requirements of Rule 9(b) by relying upon the complexity of the edifice which he created")(citation and internal quotation marks omitted).

impose liability under the FCA unless the provider submits false or fraudulent claims to the government for payment based on these wrongful activities.[15] See Clausen, 290 F.3d at 1311 ("Without the presentment of [a false or fraudulent] claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act.")(emphasis in the original); United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., No. 96-1380, 2000 WL 17838 (E.D. La., Jan. 10, 2000)(dismissing relator's claims with prejudice where relator described the general framework for alleged fraudulent schemes but failed to link the allegedly fraudulent practices to the submission of fraudulent claims). Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the "circumstances constituting fraud or mistake" that must be pled with particularity pursuant to Rule 9(b). However, such pleadings invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims

---

[15]A number of courts have also found FCA violations where a defendant falsely certifies compliance with certain conditions required as a prerequisite for a government benefit or payment in order to induce that benefit. See, e.g., Thompson, 125 F.3d at 902. In such cases, false certification for the purpose of receiving a payment or benefit becomes the practical equivalent of a statutory false claim.

submitted to the government that constitute the essential element of an FCA qui tam action.

As applied to the FCA, Rule 9(b)'s requirement that averments of fraud be stated with particularity – specifying the "time, place, and content" of the alleged false or fraudulent representations, means that a relator must provide details that identify particular false claims for payment that were submitted to the government.[16]  In a case such as this, details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity.  These details do not constitute a checklist of mandatory requirements that must be satisfied by each allegation included in a complaint.  However, like the Eleventh Circuit, we believe that "some of this information for at least some of the

---

[16]In the FCA context, the concept of "place" holds less relevance for allegations about fraudulent bills or other claims allegedly submitted to the government. It remains an important detail in pleadings concerning the underlying tests, schemes, or other conduct that is linked to the submission of false claims.

claims must be pleaded in order to satisfy Rule 9(b)." <u>Clausen</u>, 290 F.3d at 1312 n.21.[17]

In describing at considerable length the defendants' sixteen schemes to defraud the government, the complaint alleges that the defendants submitted false claims to the federal government, including cost reports that were falsely certified as complete, true, and correct. It states that the defendants wrongfully billed Medicare and Medicaid, and refers generally to false confirming orders and progress notes. However, the complaint never specifies the dates or content of any particular false or fraudulent claim allegedly submitted for reimbursement by Medicare or Medicaid. It provides no identification numbers or amounts charged in individual claims for specific tests, supplies, or

---

[17]In a related context, we held that courts will allow private securities fraud cases "to advance past the pleadings stage when some questions remain unanswered, provided the complaint as a whole is sufficiently particular to pass muster under the PSLRA." <u>Cabletron</u>, 311 F.3d at 32; <u>see</u> <u>Greebel</u> v. <u>FTP Software, Inc.</u>, 194 F.3d 185, 193 (1st Cir. 1999)(stating that the pleading requirements of the Private Securities Litigation Reform Act (PSLRA) "embody in the act itself at least the standards of Rule 9(b)"). We found that Cabletron's complaint satisfied the PSLRA's particularity requirements because "the fraud allegations advanced in [the] complaint, with their consistent details provided from at least half a dozen different sources across various alleged schemes, reinforce each other and suggest reliability of the information reported." <u>Cabletron</u>, 311 F.3d at 33. By contrast, as we discuss below, Karvelas's complaint does not allege the particulars of any of his allegations concerning the presentation of false claims to the government, and therefore, considered as a whole, the complaint does not meet the particularity requirements of 9(b). <u>See</u> <u>Greebel</u>, 194 F.3d at 204 (finding that the absence of any of a number of enumerated "basic details" describing alleged PSLRA violations was "indicative of the excessive generality of these allegations").

services.  It does not identify or describe the  individuals involved in the improper billing or allege with particularity any certification of compliance with federal regulations in order to obtain payments.  As Karvelas himself concedes in his brief to this court, his complaint "did not set forth the specifics . . . of any one single cost report, or bill, or piece of paper that was sent to the Government to obtain funding."  Nor does the complaint provide the source of information and factual basis for his conclusory allegations that the defendants submitted actual false or fraudulent claims to the government.

For example, in describing Scheme A, Karvelas alleges that the defendants "knowingly filed improper claims in that they presented claims for medical items or service that they knew were not provided as claimed" and "filed claims that were based on codes that the defendants knew would result in greater payments than what an appropriate code would have provided."  Karvelas further claims that "staffing numbers in the Medicaid and Medicare filings were make believe throughout the entire hospital."  However, the complaint does not specify the individuals who filed these claims, the dates on which any such claims were filed, the nature and content of any  documents submitted, or the amount claimed from the government based on the particular medical items and services that were allegedly improperly provided or on the "make believe" staffing levels.

-26-

The complaint alleges in Scheme A that "from 1994 to 1997 the Hospital was certifying 12 respiratory therapists when in reality the hospital had only 7 full time respiratory therapists," yet it provides no details concerning the particular dates and content of the alleged certification, nor, assuming that the allegation was based on information and belief, does it set forth the source of that information or the facts on which the belief was founded. Karvelas also alludes to various documents, referring to false "Respiratory Therapist time schedules for 1994 into 1997" and "documents signed under the penalty of perjury and false statement submitted to the United States Government [that] certified that there were 11.8 Respiratory Therapists during this period of time." However, he provides no particular details about the nature of these documents or the circumstances of their submission to the United States government.

With somewhat more specificity, Karvelas alleges in his discussion of Scheme B that the blood gas laboratory "performed approximately 21,000 arterial blood gas tests (ABG's) in the three year period beginning in June, 1994 through April, 1997 at $50.00 per test." However, while he states that the Hospital "billed Medicare and Medicaid for the costs of the testing on a large percentage of these patients with each bill certified to Medicare or Medicaid that the ABG laboratory had in fact complied with the CAP and CLIA standards," Karvelas does not specify which of the

-27-

21,000 tests were billed to the government, supply any details about the particular bills and certifications submitted, or provide a factual basis for his allegation that the defendants falsely certified compliance with federal standards in order to secure Medicare or Medicaid benefits. This lack of particularity characterizes all of Karvelas's allegations concerning the submission of false claims to the federal government.[18]

In summary, Karvelas alleges serious violations by the defendants of federal standards governing the provision of patient care. However, alleged violations of federal regulations are insufficient to support a claim under the FCA. See United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA."); Clausen, 290 F.3d at 1311 ("[I]f Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government.") (emphasis in the

---

[18]Indeed, with one exception, Karvelas's complaint does not specify which of the particular violations of patient care standards that Karvelas witnessed involved Medicare or Medicaid patients. That exception involves the allegation that hospital administrators instructed him and others to falsify test results so that a trustee/patient of the hospital would qualify for Medicare payment for home oxygen. He further states that on January 26, 1997, the trustee/patient admitted to him that the results of the test were falsified. However, while this allegation provides specific details about the purported fraudulent activity, it does not identify or describe the false claims that were allegedly submitted to Medicare in connection with the trustee's treatment.

original).  While Karvelas does describe the procedures allegedly used by the hospital to submit false claims to the United States, the alleged existence of such procedures does not permit us to speculate that false claims were in fact submitted.  <u>See</u>, <u>e.g.</u> <u>United States ex rel. Walsh</u> v. <u>Eastman Kodak Co.</u>, 98 F. Supp. 2d 141, 147-48 (D. Mass. 2000) (dismissing complaint under Rule 9(b) where relator set out a methodology by which the defendants might have produced false claims without citing an actual false claim). As the district court correctly concluded, Karvelas's failure to identify with particularity any actual false claims that the defendants submitted to the government is, ultimately, fatal to his complaint.[19]

## D.  **Retaliation Claim**

Karvelas argues that the district court improperly dismissed Count IV of his complaint for failure to state a claim of retaliation under 31 U.S.C. § 3720(h).[20]  Congress added 31 U.S.C.

---

[19]Because we conclude that Karvelas has not stated with specificity allegations of actual false claims submitted to the government, we need not consider the adequacy of his pleadings concerning the defendants' alleged "schemes" or failure to comply with patient care standards.

[20]The defendants urged the district court to reject Karvelas's retaliation claim on res judicata grounds because the court had previously dismissed a similar claim filed by Karvelas against the defendants for failure to state a claim upon which relief could be granted.  <u>See</u> <u>Karvelas</u> v. <u>Melrose-Wakefield Hospital</u>, Civ. No. 00-10991 (D. Mass. May 5, 2000).  Although it acknowledged that there is circuit authority for the proposition that a Rule 12(b)(6) dismissal has res judicata effect, the court declined to dismiss the case on that ground because its order of dismissal in the

§ 3730(h) to the False Claims Act in 1986 to protect employees who pursue, investigate, or contribute to an action exposing fraud against the government. This section provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. . . .

31 U.S.C. § 3730(h). To prevail on a False Claims Act retaliation claim, a plaintiff must show that 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct. See, e.g, McKenzie v. BellSouth Telecomm., Inc., 219 F.3d 508, 514 (6th Cir. 2000); United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 736 (D.C. Cir. 1998). Once the employee has established a prima facie case of retaliation, the burden shifts to the employer to prove that the employee would have been terminated or subjected to other adverse action even if he or she had not engaged in the protected conduct. Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 186 (3d Cir. 2001), cert. denied, 536 U.S.

---

earlier case, entered without prejudice, had "noted that plaintiff's False Claims Act litigation was in its early states."

-30-

906 (2002); <u>Yesudian</u>, 153 F.3d at 736 n.4 (quoting S. Rep. No. 99-345, at 34, <u>reprinted in</u> 1986 U.S.C.C.A.N. at 5300).

In the instant case, the district court determined that Karvelas's complaint did not allege facts sufficient to support the second element of his FCA retaliation claim (the employer's knowledge that he was engaging in protected conduct). On appeal, Karvelas argues that the district court erred in dismissing his retaliation claim because his complaint is "replete with allegations that at every stage Karvelas witnessed activities that could lead to False Claims Act allegations, that he reported these activities, and that he was threatened and finally terminated for doing so." For the reasons set forth below, we affirm the decision of the district court, although on somewhat different grounds.[21]

In order to satisfy the first element of a cause of action under 31 U.S.C. § 3730(h), a plaintiff must demonstrate that he or she engaged in activity protected under the FCA. This element of a retaliation claim does not require the plaintiff to

---

[21]In his complaint, Karvelas states that "throughout [his] employment at Melrose-Wakefield, he complained to management about deficiencies in the care and about the activities hereinbefore related within his department and throughout the Hospital." He explains in his opposition to the defendants' motion to dismiss that the phrase, "hereinbefore related," includes every allegation pled in the prior paragraphs of his complaint. We agree with the district court that "it is not sufficient to plead in this paragraph that '[Karvelas] complained to management about' each activity pled in the previous 458 paragraphs" and, like the district court, we consider only those allegations that concern Karvelas's interactions and communications with his employers and activities that were the subject of those communications.

have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation. See Yesudian, 153 F.3d at 741. Rather, an employee's conduct is protected where it involves "acts done . . . in furtherance of" an FCA action. 31 U.S.C. § 3730(h). The statute's legislative history states that "protection should extend not only to actual qui tam litigants, but those who assist or testify for the litigant, as well as those who assist the Government in bringing a false claims action. Protected activity should therefore be interpreted broadly." S. Rep. No. 99-345, at 34, reprinted in U.S.C.C.A.N. at 5299.

Courts have adopted various standards for determining whether conduct is "in furtherance" of an action under the FCA. Some have said that a "plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." Hopper, 91 F.3d at 1269; see Yesudian, 153 F.3d at 740. Some have found that activity is protected under § 3730(h) where litigation was "a distinct possibility" at the time that the employee made his or her disclosures to the employer. See, e.g., Childree v. UAP/GA AG Chem., Inc., 92 F.3d 1140, 1146 (11th Cir. 1996); Neal v. Honeywell, Inc., 33 F.3d 860, 864 (7th Cir. 1994). Two circuits have drawn on Title VII's anti-retaliation provision, requiring the fact finder to determine that the plaintiff had a good faith and objectively reasonable belief that the defendant was committing fraud against the government. Wilkins v. St. Louis

-32-

Hous. Auth., 314 F.3d 927, 933 (8th Cir. 2002); Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 845 (9th Cir. 2002). Although there is no particular magic in the word choice, we follow the approach of the Fifth Circuit and interpret "conduct in furtherance of an action under the FCA" as conduct that reasonably could lead to a viable FCA action. We think this standard is most consistent with the broad interpretation for protected activity under § 3730(h) urged by the legislative history, and we apply it here.

Karvelas argues that his complaint includes numerous "allegations to show that [he] witnessed and reported problems that could reasonably lead to False Claim Act cases." For example, he argues that he alleged engagement in protected activity when he claimed that:

> While still an employee of the Hospital, [he] pointed out to his superiors all the way up to the president, the inadequate staffing, inconsistent administration of treatment orders, the absence of blood gas quality control, and inappropriate documentation in the administration of care and treatment of patients throughout the Hospital, as well as the failure to meet regulatory standards which are required for reimbursement by Medicare and Medicaid.

We do not agree with Karvelas that such activities constitute protected activity. It is true that Karvelas need not have known that his actions could lead to a qui tam suit under the FCA, or even that a False Claims Act existed, in order to demonstrate that he engaged in protected conduct. See Yesudian, 153 F.3d at 741

-33-

(holding that "even an investigation conducted without contemplation – or knowledge of the legal possibility of – a False Claims Act suit can end up being 'in furtherance' of such an action"). However, conduct protected by the FCA is limited to activities that "reasonably could lead" to an FCA action; in other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government. See id. at 740. Karvelas's statement that he reported his supervisors' destruction of incident reports of medical errors suggests a cover-up of regulatory failures but does not allege investigation or reporting of false or fraudulent claims knowingly submitted to the government. Although "[c]orrecting regulatory problems may be a laudable goal," it is "not actionable under the FCA in the absence of actual fraudulent conduct." Hopper, 91 F.3d at 1269; see McKenzie, 219 F.3d at 516 (noting that while internal reporting may be protected activity under the FCA, "the internal reports must allege fraud on the government"). Similarly, nearly all of Karvelas's statements concerning his alleged activities, the defendants' alleged knowledge of those activities, and the defendants' alleged retaliation against Karvelas for those activities suggest that Karvelas witnessed and reported problems concerning the hospital's alleged failure to comply with patient

-34-

care standards. Such conduct, without more, does not constitute protected conduct under the FCA.[22]

At two points in his complaint, however, Karvelas does suggest that he investigated and reported to his employer problems with improper billing. First, he states:

> 112. The Relator John C. Karvelas also complained about directives from his immediate supervisor to complete patient evaluations even if the patients had been discharged or had died. These evaluations were billed at $150.00 each, which included inpatient and outpatient, and which were not reimbursable items, but yet were billed to Medicare and Medicaid. Mr. Karvelas' supervisor in the Respiratory Therapy department, Anthony Dichiara, threatened Respiratory Therapists with retaliation if they failed to participate in this illegal activity.

He later claims that:

> 174. Medicare requires accurate reporting of financial information on cost reports and credit balances. 42 C.F.R. § 413.20. And under 42 U.S.C. § 1320a-7a(a)(1)(A) the defendants knowingly filed improper claims in that they presented claims for medical items or service that they knew were not provided as claimed. Under 42 U.S.C. § 1320a-7a(a)(1)(A) the defendant Hospital filed claims that were based on codes that the defendant knew would result in greater payments than what an appropriate code would have provided.
> 175. The Hospital acknowledged that it knew of the problem when Relator John C. Karvelas reported it

_____

[22]Where an employee has not engaged in conduct protected under the FCA, he cannot meet the second and third elements of an FCA retaliation claim, as those depend upon the first. See, e.g., Yesudian, 153 F.3d at 743 (explaining that "grumbling to the employer about job dissatisfaction or regulatory violations" does not demonstrate that the plaintiff's employer was aware of the protected activity, "just as it does not constitute protected activity in the first place").

internally, but still the Hospital failed to take corrective action.

Although too vague to meet the Rule 9(b) pleading standards for a qui tam action,[23] these paragraphs allege that Karvelas was investigating and reporting the hospital's fraudulent billing practices rather than merely its noncompliance with state or federal regulations.[24] The district court, however, found that these particular allegations failed to state an FCA retaliation claim because "the fact that [Karvelas] reported these problems does not mean that he gave notice to his employer that he was conducting an investigation of the hospital's billing practices as a precursor to a False Claims Act proceeding." We disagree with this analysis.[25]

---

[23] A retaliation claim under 31 U.S.C. § 3730(h) does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b). See, e.g., United States ex rel. Barrett v. Columbia/HCA Health Care Corp., 251 F. Supp. 2d 28, 38 (D.D.C. 2003) ("While [plaintiffs'] complaint inartfully and inadequately pleads the FCA causes of action . . ., that does not dictate a 12(b)(6) dismissal of the retaliation discharge based on the well-pleaded facts underlying those causes of action.").

[24] As we are required to make all reasonable inferences in favor of the plaintiff in considering a 12(b)(6) motion, we construe paragraph 112 to allege that Karvelas complained about the fraudulent billing of unnecessary patient evaluations as well as about the evaluations themselves.

[25] We do not read the language of the district court to suggest that Karvelas was required to notify the Hospital that his investigation was in fact a "precursor to" an FCA case. For the reasons we explain, such a holding would be incorrect as a matter of law. As the district court itself recognized, a "defendant need

To meet the knowledge element of an FCA retaliation claim, "the whistleblower must show the employer had knowledge the employee engaged in 'protected activity.'" S. Rep. No. 99-345, <u>reprinted in</u> 1986 U.S.C.C.A.N. at 5300. In other words, the employer must be on notice that the employee is engaged in conduct that "reasonably could lead to a False Claims Act case." <u>Yesudian</u>, 153 F.3d at 742. However, just as the plaintiff is not required to know that his investigation reasonably could lead specifically to a False Claims Act action, the employer need not know that the employee has filed or plans to file a qui tam action, nor even necessarily be aware of the existence of the FCA. <u>See</u> <u>Yesudian</u>, 153 F.3d at 742. Instead, "the kind of knowledge the defendant must have mirrors the kind of activity in which the plaintiff must be engaged." <u>Id.</u> (explaining that "[a] plaintiff who need not even have heard of the FCA can hardly be required to inform his supervisor that he 'intend[s] to utilize his allegations in furtherance of' an action under that Act."). What the employer must know is that the plaintiff is engaged in protected conduct, that is, investigation or other activity concerning false of

---

not know, or be advised, that [the false or fraudulent claims investigated by the employee] would violate the False Claims Act itself." <u>Yesudian</u>, 153 F.3d at 742.

fraudulent claims that the employer knowingly presented to the federal government. See, e.g., id. 742; Hopper, 91 F.3d at 1269.[26]

Thus, to satisfy the knowledge element of § 3730(h), Karvelas must show that the defendants knew that he was investigating the Hospital's knowing presentation of false or fraudulent claims for payment to the government. Karvelas alleged, in paragraph 112 of his complaint, that he reported the hospital's knowing falsification of evaluations of dead or discharged patients and its illegal billing to Medicare and Medicaid for those evaluations. In paragraph 174, he stated that he reported internally that hospital officials "knowingly filed improper claims in that they presented claims for medical treatments they knew were not provided as claimed." Taking these allegations as true, it appears that Karvelas notified his employers about the results of his

---

[26]Some courts have held that employees who investigate government billings or payments as part of their job duties must "make it clear that the employee's actions go beyond the assigned task" in order to demonstrate that they were engaged in protected conduct and their employers were on notice of that conduct. United States ex rel. Eberhardt v. Integ. Design & Constr., Inc., 167 F.3d 861, 868 (4th Cir. 1999); Brandon v. Anesthesia & Pain Mgmt. Assoc., 277 F.3d 936, 945 (7th Cir. 2002) (stating that where plaintiff's job responsibilities included ensuring that hospital billing practices complied with Medicare regulations, "the fact that Brandon was alerting his supervisors to the possibility of their non-compliance with the rules would not necessarily put them on notice that he was planning to take a far more aggressive step and bring a qui tam action against them or report their conduct to the government"). Because Karvelas's job duties did not involve investigating government payments or billings, he need not meet the heightened requirements for employees whose job descriptions do include such responsibilities in order to establish a § 3730(h) retaliation claim.

-38-

investigation concerning false claims for payment that the hospital knowingly submitted to the government. These representations did not simply report noncompliance with federal regulations, see Hopper, 91 F.3d at 1269, or complain of improper billing in accordance with Karvelas's job responsibilities, see Eberhardt, 167 F.3d at 867-68.[27] By notifying his employers about fraudulent claims for payment that the Hospital knowingly submitted to the government, Karvelas provided notice of protected conduct under the FCA. Therefore, we find that Karvelas has alleged facts sufficient to support an inference that he engaged in protected conduct under the FCA and that the defendants were put on notice of that conduct. See Carroll, 294 F.3d at 241 (explaining that a complaint will withstand a 12(b)(6) motion to dismiss if it "alleges facts sufficient to make out a cognizable claim").

However, in order to state a claim for retaliation, Karvelas must also allege that he was terminated because of his protected conduct. See S. Rep. No. 99-345, at 35, reprinted in 1986 U.S.C.C.A.N. at 5300 (stating that the employee must show that "the retaliation was motivated, at least in part, by the employee's engaging in protected activity"). At the end of his complaint,

---

[27] Moreover, Karvelas alleges that he told his employers about the submission of claims that were in fact fraudulent, in contrast to the claims reported by the employee in Luckey v. Baxter, 183 F.3d 730, 732 (7th Cir. 1999)(noting that "only in Humpty Dumpty's world of word games would anyone apply the label 'fraud' to the kind of representations Baxter made"). Therefore, we disagree with the district court that Luckey is controlling here.

Karvelas states generally the appropriate elements of a retaliation cause of action, claiming that the defendants retaliated against him because of his investigation of the hospital's FCA violations.[28] However, his complaint fails to allege facts sufficient to support this third element of his retaliation claim.

As we have observed, under the "notice" pleading standard of Federal Rule of Civil Procedure 8(a), a complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and therefore need not include detailed pleading of the facts. However, while a complaint "need not include evidentiary detail," it must nonetheless "allege a factual predicate concrete enough to warrant further proceedings." DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999)(noting that "[c]onclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition"). Thus, even under the liberal pleading requirements of Rule 8(a), a

---

[28]The complaint states that "Defendant Melrose-Wakefield discharged John Karvelas in retaliation for his investigation of the defendants' violations of its Government contracts under Medicaid and Medicare and its False Claims Act violations." Applying the language of § 3730(h), it further claims that "Relator John Karvelas was discriminated against in his termination by Defendant Melrose-Wakefield Hospital by and through its officers, agents, and employees, because of lawful acts done by him in the furtherance of an action under the False Claims Act, including his participation in the investigation of an action under the False Claims Act and his reporting to the United States Government the fraudulent actions of the defendants."

plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). Simply parroting the language of a statutory cause of action, without providing some factual support, is not sufficient to state a claim. See Arruda, 310 F.3d at 18 (affirming that we do not credit claims made in a complaint if they are "bald assertions" or "unsupportable conclusions.").

In his complaint, Karvelas alleges that his supervisor retaliated against him by falsely accusing him of improper conduct because he had told her boss about unsafe conditions and the lack of a back-up support system in the Respiratory Therapy Department. He further states that he was fired after returning from a meeting with senior management of the hospital, at which he reported "defective ABG testing run on a fetus" by another respiratory therapist. Karvelas "told his manager, Ms. Hyland-Miller, what he had done" and informed her about "the data he had collected, his visits with Drs. Sen and Lilly, and the failure of the Hospital to meet patient-care standards." He was fired on the spot. According to the complaint, Karvelas was subsequently informed by letter that he had been discharged because of "inappropriate behavior," including reporting "alleged unsafe conditions at the Hospital" to a member of a state senator's staff. However, as noted,

-41-

investigations of allegedly unsafe conditions or noncompliance with patient care standards do not constitute protected conduct under the FCA. Nowhere in his complaint does Karvelas allege a factual predicate concrete enough to support his conclusory statement that he was retaliated against because of conduct protected under the FCA. Therefore, we conclude that the district court properly dismissed Count IV of Karvelas's complaint for failure to state a claim of retaliation under 31 U.S.C. § 3730(h).

**E.  Dismissal with Prejudice and Without Leave to Amend**

Karvelas argues that even if his complaint failed to meet the pleading obligations of the Federal Rules of Civil Procedure, the district court nonetheless erred when it dismissed his case with prejudice and without affording him an opportunity to amend his complaint. We disagree.

First, we reject Karvelas's argument that "a ruling on a 12(b)(6) motion is not a ruling on the merits; [but rather] only a non-merits ruling on the propriety of the pleadings." It is well settled in this circuit that dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is a final decision on the merits. Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 388 (1st Cir. 1994). As we have explained, "the dismissal of the complaint fits comfortably under the Supreme Court's definition of a 'final decision' . . . as one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id.

(quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373-74 (1981)).  Moreover, in the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice. See Andrews-Clarke v. Lucent Tech., Inc., 157 F. Supp. 2d 93, 99 (D. Mass 2001)("A dismissal for failure to state a claim is a dismissal on the merits . . . . This type of dismissal, presumed to be with prejudice unless the order explicitly states otherwise, has a claim preclusive effect."); c.f. Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 628 (1st Cir. 2000)("In this circuit, the phrase 'without prejudice,' when attached to a dismissal order, is . . . to be read . . . as a signification that the judgment does not preclude a subsequent lawsuit on the same cause of action either in the rendering court or in some other forum.").  Thus, in dismissing with prejudice Karvelas's complaint under Rule 12(b)(6), the district court did not depart from established precedent but simply stated explicitly what in any event would have been presumed.

Similarly, the district court did not err by failing to invite Karvelas to amend his complaint prior to dismissing the case with prejudice.  Although the denial of a motion to amend is reviewed only for abuse of discretion, "district courts do not customarily aim to defeat valid claims."  Eastern Food Servs. v. Pontifical Catholic Univ. Servs. Assoc., Inc., No. 02-2391, at 14-15 (1st Cir. Jan. 20, 2004).  Some courts have, in their discretion, allowed

-43-

relators to amend FCA complaints to cure a lack of particularity. See, e.g., United States ex rel. McCoy v. Calif. Med. Rev., Inc., 723 F. Supp. 1363, 1366 (N.D. Cal. 1989).

In this case, however, Karvelas never filed a motion to amend pursuant to Fed. R. Civ. P. 15(a), which provides for amendments as of right in the absence of a responsive pleading.[29] Therefore, the only issue before us is whether the district court erred in failing sua sponte to provide Karvelas an opportunity to amend before dismissing his complaint with prejudice.[30] Absent exceptional

---

[29] A motion to dismiss is not considered a responsive pleading. See Leonard v. Parry, 219 F.3d 25, 30 (1st Cir. 2000).

[30] The defendants argue that because Karvelas never moved for leave to amend, the issue of whether the district court erred by denying such a request is not before this court. We agree. See Dartmouth Rev. v. Dartmouth College, 889 F.2d 13, 23 (1st Cir. 1989)(holding that "the question of whether it might have been error for the court to have denied leave to amend is not before us, because plaintiffs never requested it")(quotation marks omitted). However, Karvelas does not argue that the district court erred in denying a request to amend, but rather that it erred by failing sua sponte to provide Karvelas an opportunity to amend, or notice that his pleadings were deficient, before dismissing the case with prejudice. This question is properly before us. Moreover, we do not agree with the defendants that Karvelas waived this argument because he did not seek amendment after the dismissal by moving for reconsideration or relief from the judgment. A dismissal with prejudice is a final judgment that "slam[s] the door shut on the possibility of future amendments to the complaint" unless the judgment is set aside or vacated pursuant to Rule 59 or Rule 60. Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 629 (1st Cir. 2000). Motions for post-judgment relief and direct appeal thus provide two separate avenues through which a plaintiff may challenge the dismissal of a complaint with prejudice and without leave to amend. See Acevedo-Villalobos, 22 F.3d at 389 ("Where, as here, a complaint is dismissed without leave to amend, the plaintiff can appeal the judgment or, alternatively, seek leave to amend under Rule 15(a) after having the judgment reopened under either Rule 59

circumstances, a district court has no obligation to invite a plaintiff to amend his or her complaint when the plaintiff has not sought such amendment. See Emerito Estrada Rivera-Isuzu de P.R. Inc. v. Consumers Union, 233 F.3d 24, 30 (1st Cir. 2000) (holding that district court did not commit error by "failing to invite Emerito to replead" where "despite its awareness that [the defendant] had called for dismissal [for failure to state a claim based on deficient pleadings], Emerito never amended its complaint as of right . . . nor did it formally ask the district court after judgment to permit such an amendment")(emphasis in the original); see also Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002)("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). In this case, Karvelas chose not to file a motion to amend his complaint at any stage of the litigation. Instead, he stood upon his 93-page complaint, even after the defendants filed a 12(b)(6) motion to dismiss that focused on deficiencies in the pleadings.[31] Indeed, the district court had already afforded Karvelas a generous opportunity to sharpen his pleadings when it did not dismiss with

or 60.").

[31]As the defendants point out, the government's decision not to intervene in the action also suggested that Karvelas's pleadings of fraud were potentially inadequate.

prejudice the plaintiff's first FCA retaliation complaint against the defendants. Under these circumstances, the district court did not err by failing sua sponte to provide Karvelas an opportunity to amend his complaint before dismissing the case with prejudice.[32]

### III.

Karvelas filed in the district court a 93-page complaint alleging that the defendants violated the False Claims Act and describing sixteen fraudulent "schemes" in which they allegedly participated. The complaint includes some detail about the nature of these schemes and about the defendants' alleged failure to comply with patient care standards. However, in the 93 pages of this lengthy document, we find no allegation, pled with adequate specificity, of a false claim for payment that was actually presented to the government. See Clausen, 290 F.3d at 1312 (upholding dismissal of FCA qui tam complaint where "nowhere in the blur of facts and documents assembled by [the relator] regarding six alleged testing schemes [could] one find any allegation, stated

---

[32]We conclude that the district court did not err in failing sua sponte to provide Karvelas an opportunity to amend without referring to a specific standard of review. We do that because, frankly, our cases seem inconsistent in their choice of the standard of review applicable to such cases, reviewing for abuse of discretion, see Romani, 929 F.2d at 878; plain error, see Emerito, 233 F.3d at 30; and the interest of justice, see Dartmouth Rev. 889 F.2d at 23. We need not resolve this issue here. Under any standard of review, the district court did not err in dismissing Karvelas's complaint with prejudice and without granting leave to amend.

with particularity, of a false claim actually being submitted to the Government"). The law is clear that the False Claims Act attaches liability to the submission of false claims for payment, not to the underlying fraudulent activity or other wrongful conduct on which those claims were based. See Rivera, 55 F.3d at 709. The district court correctly recognized this difference when it dismissed Karvelas's complaint.

**Affirmed.**

_____