# United States Court of Appeals

## For the First Circuit

No. 08-1904

UNITED STATES OF AMERICA EX REL.
EDWARD L. GAGNE AND LINDA JENESKI,

Plaintiffs, Appellants,

v.

CITY OF WORCESTER; STEPHEN WILLAND,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Lynch, Chief Judge,
Farris[*] and Boudin, Circuit Judges.

Daniel Joseph Shea with whom Daniel J. Shea, P.C. was on brief
for appellants.
Janet J. McGuiggan, Assistant City Solicitor, City of
Worcester Law Department, for appellees.

May 8, 2009

---

[*]    Of the Ninth Circuit, sitting by designation.

**LYNCH, <u>Chief Judge</u>**.  This appeal involves the standards for pleading with particularity fraud claims brought under two subsections of the False Claims Act ("FCA") concerned with making false records or statements to get false claims paid and conspiring to defraud the government by getting false claims paid.  31 U.S.C. § 3729(a)(2) and (a)(3).

Plaintiffs mistakenly read the Supreme Court's 2008 opinion in <u>Allison Engine Co.</u> v. <u>United States ex rel. Sanders</u>, 128 S. Ct. 2123 (2008), as having altered the requirements of pleading fraud with particularity set forth in <u>United States ex rel. Rost</u> v. <u>Pfizer, Inc.</u>, 507 F.3d 720 (1st Cir. 2007), and <u>United States ex rel. Karvelas</u> v. <u>Melrose-Wakefield Hospital</u>, 360 F.3d 220 (1st Cir. 2004).  <u>Allison Engine</u> concerns a different issue and does not alter those fraud with particularity requirements, which apply as well to the conspiracy claim.  The complaint was properly dismissed for failing to meet those standards.  The district court also acted properly within its discretion in not allowing plaintiffs to amend their complaint yet a third time.

Edward L. Gagne and Linda Jeneski, a present and a former employee of the Worcester City Manager's Office of Employment and Training ("CMOET"), filed a qui tam action on behalf of the federal government against the defendant City of Worcester and a former City official.  The United States declined to enter the case. Plaintiffs alleged federal grant funds meant for one purpose were

fraudulently diverted to improper expenditures. They alleged the defendants were liable under the FCA for violations of provisions requiring defendants to have: "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1); "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government," id. § 3729(a)(2); and "conspire[d] to defraud the Government by getting a false or fraudulent claim allowed or paid," id. § 3729(a)(3). Despite their having twice amended their complaint, relators failed to provide details on any particular false or fraudulent statement made to get a false claim paid by the federal government.

The district court granted defendants' motion to dismiss for failure to comply with Fed. R. Civ. P. 9(b) and denied relators leave to amend a third time. United States ex. rel. Gagne v. City of Worcester, No. 06-40241, 2008 WL 2510143 (D. Mass. June 20, 2008). The court later denied a Rule 59(e) motion and said relators had mischaracterized its earlier order as resting on a need to make a presentment claim under subsections (a)(2) and (a)(3). On appeal, relators argue that the court applied the "presentment" requirement of § 3729(a)(1) to their subsection (a)(2) and (a)(3) claims and that this, along with the court's reliance on Rost and Karvelas, was error in light of the Supreme

-3-

Court's decision in Allison Engine.  They also challenge the court's denial of leave to amend.  We affirm for the reasons which follow.

I.

The facts as alleged in the complaint are set forth without crediting unsupported conclusions or assertions. Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 415 (1st Cir. 2007).

Gagne worked for the CMOET; Jeneski was a former CMOET employee.  Defendant Stephen Willand was the head of CMOET and also served as Executive Director of the Central Massachusetts Regional Employment Board ("CMREB") and the Director of the City's "One Stop Provider," also known as "Workforce Central," which was established under the Workforce Investment Act ("WIA"), 29 U.S.C. §§ 2801-2945.

Under the WIA, the federal government provides grants to states to fund job training programs. See generally id. § 2811; see also Santana v. Calderón, 342 F.3d 18, 20 (1st Cir. 2003).  One stop providers, such as Workforce Central, provide training, adult education, literacy programs, and support services.  29 U.S.C. §§ 2841, 2864.

The gist of the relators' complaint is that the City improperly used WIA grant funds to pay Willand and other CMOET employees for performing very little work or for work unrelated to WIA projects, to provide City cars to Willand and others, and to

-4-

pay out $130,000 to settle a state employment discrimination lawsuit that plaintiff Gagne had brought, alleging sexual orientation discrimination. Primarily, the complaint alleged that City employees falsely categorized hours on their time sheets as time spent on WIA projects.

Relators filed suit on November 9, 2006 naming the City as defendant.[1] The central allegations of their Second Amended Complaint, filed on January 4, 2008, were as follows:

> During Workforce Central and CMREB Fiscal Year 2004 (FY2004), and before and after FY2004, Defendant City's Agents STEPHEN WILLAND, BRUCE DAHLQUIST, DONALD ANDERSON, KEVIN CROWLEY, and CARLENE BULL, among others, with the full knowledge and acquiescence of Defendant City's upper management statutorily responsible for the integrity of WIA federal funds . . . , made and caused to be made false, misleading and fraudulent pretenses and representations through periodic reports and requests for funds to the U.S. Department of Labor, U.S. Department of Health and Human Services, and State of Massachusetts based on the allocation of Workforce Central and CMREB employees' time which were not based on after-the-fact actual activities of the employees charged to the various programs, contracts, grants or awards of the [WIA]. . . . In order to accomplish the unlawful funding of WILLAND and DAHLQUIST, capitated funds earned from the welfare activities of Workforce Central were "loaned"

---

[1] Relators filed a First Amended Complaint without leave of the court on June 18, 2007. See Fed. R. Civ. P. 15(a) (allowing one amendment as of right if no responsive pleading has been filed but requiring leave for subsequent amendments). The City moved to dismiss. Relators filed an opposition in which they also asked for leave to amend. The court granted leave to amend, allowed relators to name Willand as an additional defendant, and held the City's first motion to dismiss moot.

to various Workforce Central time accounts to which ANDERSON, CROWLEY, BULL, and others would bill their time to free-up Wagner-Peyser[2] funds so that WILLAND and DAHLQUIST could bill to Wagner-Peyser as specifically prohibited by law. The loans from welfare program earnings were loaned to Department 31S account numbers 224, 228 and 231 and were never repaid. Accounts 31S224, 31S228, and 31S231 appear on Anderson and Crowley's time sheets while Wagner-Peyser, which is their legitimate One-Stop overhead, does not. CARLENE BULL is the person responsible for the accounting manipulation.

Second Amended Complaint ¶ 30. Plaintiffs also alleged that:

Beginning on or before June 28, 2003 and continuing on and after June 25, 2004 . . . [Willand and other City employees] did knowingly and willfully combine, conspire, and agree with each other, and with others known and unknown to the Relators, to commit offenses against the United States, to wit, fraud or misapplication concerning Federal funds under the [WIA], in violation of [18 U.S.C. § 665] and fraud or misapplication concerning a program receiving Federal funds in violation of [18 U.S.C. § 666]; and did further so combine, conspire and agree to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the U.S. Department of Labor through deceit, trickery and dishonest means.

Id. ¶ 22.

Other paragraphs of the complaint alleged that defendants engaged in a conspiracy to defraud the government, by "caus[ing] false, misleading and fraudulent pretenses and representations to

---

[2] The Wagner-Peyser Act, 29 U.S.C. § 49 et seq., enacted in 1933, was amended by the WIA. Workforce Central and the CMREB received funds under both statutes.

-6-

be made to WIA funding sources . . . to allow [City employees] to receive excessive and unreasonable compensation through unlawful, dishonest and deceitful means by misapplication or obtaining by fraud of funds from the [WIA]." Id. ¶ 23. The complaint also alleged defendants violated the WIA because Willand and others worked for the CMOET while at the same time holding official roles in Workforce Central and the CMREB.[3] Id. ¶¶ 9-10. Defendants moved to dismiss on January 28, 2008, arguing that the Second Amended Complaint still failed to allege fraud with the particularity required under Rule 9(b).[4]

On June 20, 2008, the district court entered an order dismissing the Second Amended Complaint, as we have described. The court noted that relators' opposition incorporated by reference their earlier opposition to the first motion to dismiss, in which they had sought leave to amend. The court said it was unclear whether relators intended to request leave to amend their complaint

---

[3] In their opposition to the City's motion to dismiss the first complaint on Rule 9(b) grounds, plaintiffs had attached 119 pages of allegedly fraudulent time sheets. But these time sheets were not attached to the Second Amended Complaint.

[4] Defendants also argued that the court lacked jurisdiction under the public disclosure bar of the FCA, see generally Rost, 507 F.3d at 727-28; 31 U.S.C. § 3730(e)(4)(A), and that relators had not served them properly, see Fed. R. Civ. P. 4. The district court held it could not determine whether the public disclosure bar applied on the record before it and did not reach the Rule 4 argument. Defendants do not address either ruling on appeal.

again, but held that even if they did, it would not allow further amendment.  Gagne, 2008 WL 2510143, at *5 n.5.

Relators filed a motion to alter or amend judgment purportedly under Rule 59(e), arguing that the court had committed a manifest error of law by relying on Karvelas, which they said dealt only with "presentment" cases, or cases brought under subsection (a)(1) of the FCA in which the allegation is that the defendant actually presented a false claim to the government.[5] They argued Karvelas did not apply to subsection (a)(2) or (a)(3) cases.  The court denied plaintiffs' motion, stating relators erred in arguing it based its holding on a presentment requirement, and saying it "ha[d] considered the sufficiency of relators' complaint

---

[5]     Relators also argued the court committed a manifest error of law by misstating the statutory language in describing their claims.  The court said the complaint alleged defendants violated the FCA "by (1) presenting false or fraudulent claims for payment or approval to the federal government in violation of § 3729(a)(1), (2) making or using false records or statements to make false or fraudulent claims in violation of § 3729(a)(2), and (3) conspiring to get false or fraudulent claims paid or approved by the federal government in violation of § 3729(a)(3)."  Gagne, 2008 WL 2510143, at *1 (emphasis added).    Relators argued that the court's substitution of "and" for the statute's "or" conflated the three subsections and led it to extend the presentment requirement of (a)(1).
        Relators also argue the court erroneously summarized the elements of each subsection.  For example, it substituted "to make false or fraudulent claims" for the statute's "to get a false or fraudulent claim paid or approved by the Government" in describing subsection (a)(2).  While the court did use summary language in describing relators' claims that did not reflect the exact statutory text, the remainder of its opinion shows this summary did not cause it to analyze the complaint incorrectly.

-8-

with regard to Rule 9(b) only," which it held applies with equal force to subsections (a)(1) through (a)(3). Relators appealed.

II.

A.        The Dismissal of Relators' Complaint

We review de novo the district court's dismissal order for failure to comply with Rule 9(b). See SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 33 (1st Cir. 2008).

We have previously held the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to claims brought under subsection (a)(1) of the FCA, Karvelas, 360 F.3d at 227-28, and subsection (a)(2), Rost, 507 F.3d at 731. We now hold those Rule 9(b) requirements apply to conspiracy claims under subsection (a)(3). That is the rule of most circuits. See, e.g., United States ex rel. Marlar v. BWXT Y-12, L.L.C., 525 F.3d 439, 445 (6th Cir. 2008); United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006); Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam); see also 2 J.T. Boese, Civil False Claims and Qui Tam Actions § 5.04, at 5-44 to -45 (3d ed. 2009).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This standard "means that a complaint must specify 'the time, place, and content of an alleged false representation.'" Rost, 507 F.3d at 731 (quoting Doyle v.

-9-

Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)); see also Alternative Sys. Concepts, Inc. v. Synopsis, Inc., 374 F.3d 23, 29 (1st Cir. 2004) (noting that Rule 9(b) requires the pleader "to specify the who, what, where, and when of the allegedly false or fraudulent representation"). "Conclusory allegations . . . are not sufficient" to satisfy Rule 9(b). Rost, 507 F.3d at 731. The rule may be satisfied, however, "where, although some questions remain unanswered, the complaint as a whole is sufficiently particular to pass muster under the FCA." Id. at 732; see also Karvelas, 360 F.3d at 233 n.17 ("In a related context, we held that courts will allow private securities fraud cases 'to advance past the pleadings stage when some questions remain unanswered, provided the complaint as a whole is sufficiently particular to pass muster under the [Private Securities Litigation Reform Act].'" (quoting In re Cabletron Sys., Inc., 311 F.3d 11, 32 (1st Cir. 2002))).

The essence of relators' argument is that they have pled facts sufficient to meet the Rule 9(b) standards under (a)(2) and (a)(3), if not as to the "presentment" of a false claim to the federal government.[6] They say under Allison Engine they do not need to plead presentment as to their (a)(2) and (a)(3) claims. That is true as far as it goes, but irrelevant. The district court did not impose a presentment requirement; rather, it correctly held

---

[6] Relators make no arguments specific to their (a)(1) claim and have therefore waived that argument on appeal.

-10-

that the allegations made did not otherwise meet the fraud pleading requirements for the elements of claims under subsections (a)(2) and (a)(3).

In Allison Engine, an FCA qui tam action, the Supreme Court clarified, unanimously, the pleading requirements for the elements of claims brought under subsections (a)(2) and (a)(3) of the FCA. It reversed an opinion of the Sixth Circuit which held that the relators did not need to show that the defendant intended that the false claim be paid by the government, only that it be paid by a private entity using government funds. Allison Engine, 128 S. Ct. at 2126-28.

The Supreme Court held that claims under subsections (a)(2) and (a)(3) need not show that a false claim has actually been presented to the government. Id. at 2129-30. It also held that the complaint must show that the government, and not a private contractor using government funds, was the defrauded party. Id. at 2128. The Court said that subsection (a)(2) does not "require[] proof that a defendant's false record or statement was submitted to the Government," only that "the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'" Id. at 2129-30; see also 1 Boese, supra § 2.02[G]. The defendant must have "intend[ed] the Government to rely on that false statement as a condition of payment." Allison Engine, 128 S. Ct. at 2130. Under subsection

-11-

(a)(3), the Court held, the complaint need not show the defendants "intended the false record or statement to be presented directly to the Government," but it must show they intended to defraud the government and "agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." Id. at 2130-31.[7]

Karvelas requires the complaint to provide, among other fraud specifics, "details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, [and] the amount of money charged to the government." Karvelas, 360 F.3d at 233. Rost recognizes that Karvelas nevertheless allows some flexibility in construing the fraud allegations of FCA complaints. Rost, 507 F.3d at 731-32. Even viewing the complaint under a more flexible standard, we agree with

---

[7] Allison Engine thus forecloses, in subsection (a)(2) and (a)(3) cases, a broad reading of portions of our Karvelas and Rost holdings. For example, in Karvelas, which involved a subsection (a)(1) claim, we said that "the defendant's presentation of false or fraudulent claims to the government is a central element of every [FCA] case," Karvelas, 360 F.3d at 232 (emphasis added), and that a complaint must "provide details that identify particular false claims for payment that were submitted to the government," id., repeated in Rost, 507 F.3d at 731. That is true only of cases under subsection (a)(1), which expressly includes a presentment requirement. As to subsection (a)(2) or (a)(3) claims, the relator must still connect the allegedly fraudulent statement to a planned claim on the government fisc, must show that the defendant intended the statement would have a material effect on the government's decision to pay a claim, and must plead the facts of the fraud with sufficient particularity to satisfy Rule 9(b). Cf. Universal Commc'n Sys., Inc., 478 F.3d at 426-27 (noting that Rule 9(b) required plaintiff to draw connection between defendants' false statements and allegedly fraudulent securities scheme).

-12-

the district court that the complaint was insufficiently particular to pass muster under subsections (a)(2) and (a)(3) of the FCA.

We take the most specific of the paragraphs of the complaint, paragraph 30. The complaint does allege the beneficiaries of the alleged fraud. It also identifies which statute was the source of the federal funds. It alleges, in less clear terms than our recounting, that Willand and other City employees engaged in certain practices; it also referred generally to other unnamed City employees. It named employee Bull "as the person responsible for the accounting manipulation," albeit without explanation, including any explanation as to why the manipulation was fraudulent. It did allege in general terms some of the mechanisms said to be fraudulent: that certain unspecified funds from Workforce Central welfare activities were "loaned" to other Workforce Central time accounts and that City employees would bill their unspecified time (presumably to those time accounts) in order to free up Wagner-Peyser funds. The purpose of the loans, it is alleged, was so that Willand and Dahlquist could bill something which is unspecified, and whatever they did bill was prohibited by some unspecified law. The complaint adds that City employees Anderson and Crowley had time sheets, unspecified, with these particular accounts being listed on them for some times, unidentified, while their legitimate, unspecified, overhead account under the Wagner-Peyser Act was not listed.

The complaint largely ignores the fact that it is the fraud itself which must be pled with particularity, not just who benefits from the fraud and what pot of federal money may be the object of the fraud. It is also not enough to allege there has been some accounting misallocation of expenses to one federal pot of money rather than another without some explanation of why that is fraudulent.[8]

Relators provide no details on what the alleged "false, misleading and fraudulent pretenses and representations" consisted of, who made them, or when they were made "to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729 (a)(2). See Alternative Sys. Concepts, Inc., 374 F.3d at 29. They also do not specify what the "periodic reports and requests for funds" were which were made.

Relators also fail to connect the only falsity or fraud for which they provide any detail -- the allegedly fraudulent time sheets -- to an effort to get a false claim paid or approved by the government. They state only that "[t]he employee time-sheets are official documents that are issued in compliance with law and required to be maintained to support invoices." They do not provide any details about the invoices themselves. They do not

---

[8] The complaint also alleged that defendants conspired to pay the tort settlement to Gagne "unlawfully, from WIA funds, . . . as prohibited by law." The complaint provides no explanation about how or why this was fraudulent.

show how the time sheets had a material effect on the government's decision to pay the invoices or any other claim, even if the time sheets were considered. Although the complaint gives details on the time accounts to which City employees allegedly falsely billed their time, such fraudulent reporting is not actionable under the FCA unless it is connected to getting a false or fraudulent claim on the government paid or approved.

The complaint attempts to track the general statutory language by alleging that defendants, "through each act of fabrication and submission of a fraudulent time sheet or other document, made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government," and estimates that in FY2004, there were up to 1000 instances of fraudulent time sheet submission, rendering defendants liable for approximately $500,000 in damages. However, a conclusory allegation that defendants' submissions of time sheets was the making or usage of a false record or statement to get a false or fraudulent claim paid or approved by the government, absent more detail about those submissions and their connection to the false or fraudulent claims, is insufficient under Rule 9(b). See Rost, 507 F.3d at 731.

Finally, the complaint alleges that Willand's and other City employees' holding multiple positions violated the WIA. However, "FCA liability does not attach to violations of federal

law or regulations . . . that are independent of any false claim."
Id. at 727.

The district court was correct.

B.        The Denial of Leave to Amend

Relators also challenge the district court's refusal to grant them leave to amend their complaint a third time. See Fed. R. Civ. P. 15(a)(2). Our review is for abuse of discretion. O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004).

Rule 15(a) reflects a liberal amendment policy, see id., and provides that a court "should freely give leave when justice so requires." Even so, "the district court enjoys significant latitude in deciding whether to grant leave to amend," and we "defer to the district court's decision 'if any adequate reason for the denial is apparent on the record.'" ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) (quoting LaRocca v. Borden, Inc., 276 F.3d 22, 32 n.9 (1st Cir. 2002)). Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Rost, 507 F.3d at 733-34.

We hold the district court did not abuse its discretion. The court did not, as relators argue, base its denial of leave to amend on the "lack of clarity" as to whether they were actually

-16-

requesting leave. The court's order was based on relators' repeated failure to cure the deficiencies in their pleadings. See Gagne, 2008 WL 2510143, at *5 n.5 (citing Rost and Foman for the proposition that permissible grounds for denial of leave to amend include a repeated failure to cure pleading deficiencies). The original complaint was filed in 2006; the First Amended Complaint was filed in 2007; the Second Amended Complaint in January 2008. The district court's opinion was on June 20, 2008. Plaintiffs do not get a fourth chance to try to get it right. See ACA Fin. Guar. Corp., 512 F.3d at 57.

## III.

We affirm the district court's order dismissing relators' claim and denying leave to amend.