Jaime BLUMER, et al., Plaintiffs

v.

ACU–GEN BIOLABS, INC., C.N. Wang, Mommy's Thinkin', Inc., Pregnancy Store, Pregnancystore.Com, and Sherry Bonelli, Defendants.

Civil Action No. 06–10359–RCL.

United States District Court, D. Massachusetts.

July 28, 2009.

Richard E. Cavanaugh, Gallagher & Cavanaugh, LLP, Lowell, MA, Tyson R. Ence, Rosenberg Schapiro Englander Chicoine & Leggett, P.C., Boston, MA, for Defendants.

Barry S. Gainey, Peter J. Lamont, Gainey & McKenna, Midland Park, NJ, Peter

A. Lagorio, Lynda Carey Paris, Law Office of Peter A. Lagorio, Boston, MA, for Plaintiffs.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

This putative class action arises from the sales and marketing of the Baby Gender Mentor Kit ("Gender Mentor"), a product which purportedly detects the gender of a fetus through genetic analysis of maternal blood samples. Chang–Ning Wang ("Wang") is the owner and President of Acu–Gen Biolabs, Inc. ("Acu–Gen"), a Massachusetts corporation that manufactures, markets and sells the Gender Mentor. Sherry Bonelli ("Bonelli") is the owner, and President of the Pregnancy Store and Pregnancystore.com, Illinois entities which also distribute the Gender Mentor. The Plaintiffs allege that Acu–Gen, Wang, Bonelli, Pregnancy Store, and Pregnancystore.com (together, the "Defendants") falsely promoted the Gender Mentor product as being 99% accurate, caused customers consequential damages averaging $1000 per customer, inflicted emotional distress, and failed upon request to provide customers with the 200% refund guarantee. The Plaintiffs move to further amend their already twice amended complaint to supplement the alleged facts and add additional named plaintiffs. On the basis of the third amended complaint, Acu–Gen and Wang oppose the motion to amend as futile, failing to cure jurisdictional deficiencies.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY [1]

The Gender Mentor container includes a directional insert, two pregnancy tests, a

---

1. The factual background is taken from the Plaintiffs' proposed Third Amended Complaint. The Defendants dispute the facts alleged. For the purposes of the motion to amend, the facts are taken as alleged.

specimen collection kit, and a shipping envelope. (Third. Am. Compl. ¶ 42.) The Gender Mentor retails for $25.00, not including tax, shipping and handling charges. *Id.* at ¶ 42. Once complete, the kits are to be mailed, at consumer's expense, to Acu–Gen, where the cost of the lab testing and processing is $250.00. *Id.* at ¶ 42. The Gender Mentor is sold online exclusively through the *www.babygender mentor.com* and *www.pregnancystore.com* websites. *Id.* at ¶ 44. As of December 8, 2008, the Defendants have sold approximately 6,521 Gender Mentor units. *Id.* at ¶ 33.

The Defendants advertise that the product can discern the gender of the fetus by detecting gender specific fetus genetic materials in the maternal blood, "offer[ing] the most accurate and the earliest baby gender test to date." (Third. Am. Compl. ¶ 43.) The Defendants' websites advertise and market the product as being "99.9% accurate" and "infallibly accurate in foretelling the gender of a healthy baby." *Id.* at ¶ 41. The websites "guarantee that all test results will be absolutely 99.9% accurate." *Id.* Both websites contain statements that guarantee customers will be entitled to a 200% refund if the results are not correct. *Id.* at ¶ 44.[2] According to its own submission, Acu–Gen has paid refunds to 565 purchasers as of December 8, 2008. (Defendants Acu–Gen and Wang's Memorandum of Law in Support of Their Opposition to the Plaintiffs' Motion to Amend ["Defs.' Opp."] 3.) The Plaintiffs maintain that the majority of these refunds were

paid after the initial filing of the class action.

The Plaintiffs claim that the Defendants intentionally misrepresent the Gender Mentor's scientific accuracy. (Third Am. Compl. ¶ 45.) The Plaintiffs allege that when women with incorrect test results attempt to obtain their refund, the Defendants refused to abide by the guarantee. *Id.* at ¶ 48. When questioned by women about the inaccuracy of test results, Wang allegedly gave myriad reasons including chromosomal abnormalities in the fetus, vanishing twin syndrome[3], and infant deformities. *Id.* at ¶ 49. Based on Wang's statements, the Plaintiffs allege that women feared for their babies' health and undertook unnecessary and dangerous procedures, including multiple ultrasounds, amniocentesis, and chromosomal testing. *Id.* Many of these tests were not covered by the women's medical insurance, in which case, they paid for the procedures themselves. *Id.*

One hundred thirteen named plaintiffs filed a Second Amended Complaint against the Defendants on October 26, 2006. (Docket No. 43.) The parties engaged in unsuccessful settlement negotiations. On October 16, 2008, Acu–Gen and Wang filed a motion to dismiss the Plaintiffs' Second Amended Complaint for lack of jurisdiction. (Docket No. 77.) Thereafter, the Plaintiffs filed a motion for summary judgment as to liability on November 21, 2008. (Docket No. 85.) The Court heard oral arguments on the motion to dismiss on December 9, 2008 and ruled further juris-

---

**2.** The Defendants contend that as of May 2006, they reduced the Gendor Mentor warranty from 200% to 100% guaranteed refund for any alleged defective product. (Defs.' Opp. 9 n. 2.)

**3.** A vanishing twin is a condition whereby two or more eggs are fertilized but one of the fetuses in the multiple set disappears in the

uterus during pregnancy. The disappearance is attributed to a miscarriage and the fetal tissue may be absorbed by the other fetus(es), the mother, or the placenta. *See* American Pregnancy Association, *http://www.american pregnancy.org/multiples/vanishingtwin.html* (last visited July 22, 2009). Typically, the syndrome is diagnosed with the use of early ultrasounds. *Id.*

dictional discovery pertinent. The Court ordered both parties to proceed with the summary judgment schedule and heard both the motion to dismiss and summary judgment oral arguments on January 22, 2009. The Court granted the Defendant's motion to dismiss for lack of jurisdiction without prejudice, thus mooting the Plaintiffs' motion for summary judgment (Docket No. 85).

On February 19, 2009, the Plaintiffs filed a motion to amend their complaint and attached a Third Amended Complaint with 198 named plaintiffs. The Plaintiffs allege this Court has subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act ("Magnuson–Moss Act"), 15 U.S.C. § 2310(d)(3). The proposed Third Amended Complaint alleges eight counts: unjust enrichment; U.C.C. §§ 2–313, 2–314 and 2–315 violations; civil conspiracy; negligence; negligent misrepresentation; and violations of 15 U.S.C. § 2301 (the Magnuson–Moss Act) and Chapter 93A of the General Laws of Massachusetts.

## III. ANALYSIS

### A. Motion to Amend

#### 1. Applicable Standard of Review

The Court should "freely give leave [for amendments] when justice so requires." Fed.R.Civ.P. 15(a)(2). District courts enjoy "significant latitude in deciding whether to grant leave to amend." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir.2009) (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir.2008)) (internal citation omitted). Courts appropriately may deny leave for several reasons including "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." *Id.*

"In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed.R.Civ.P. 12(b)(6)." *Adorno v. Crowley Towing And Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). Courts may reach the merits of jurisdictional issues if necessary to determine futility. *See Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 8 (1st Cir.1983) (reaching the merits of an admiralty jurisdiction issue to address the lower court's denial of a motion to amend on the grounds of futility). "The bar for a plaintiff tendering an amended complaint is higher after a motion for summary judgment has been filed, as the plaintiff must demonstrate 'that the proposed amendments were supported by substantial and convincing evidence.'" *Adorno*, 443 F.3d at 126 (quoting *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir.1994)).

#### 2. Futility

Leave to amend may be denied for several reasons including undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, and futility. *Gagne*, 565 F.3d at 48. The Here, the Plaintiffs filed a motion to amend within the 30 day period provided by the Court. There has not been any undue delay or prejudice to the opposing party nor have the Defendants asserted that the Plaintiffs are acting in bad faith. Acu–Gen and Wang argue that the Court should deny the Plaintiffs' motion to amend their complaint as futile since the proposed Third Amended Complaint fails to cure the jurisdictional deficiencies of the previous complaints.

##### a. Jurisdiction under CAFA

Pursuant to 28 U.S.C.A. § 1332(d)(2), CAFA provides federal courts original jurisdiction over class actions in which (1) the class consists of at least 100 proposed members; (2) the matter in controversy is greater than $5,000,000 after aggregating

the claims of the proposed class members, exclusive of interest and costs, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant."

 Recently, the First Circuit clarified the burden plaintiffs bear to prove that the amount in controversy meets the CAFA jurisdictional minimum. Where a suit is initially filed in federal court, "the amount specified by the plaintiff controls, as long as that amount is asserted in good faith." *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 49, n. 3 (1st Cir.2009) (quoting *Barrett v. Lombardi*, 239 F.3d 23, 30 (1st Cir.2001)). If the damages allegation is challenged, however, the party seeking to invoke federal jurisdiction "has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Id.* (quoting *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir.2001)) (internal citations omitted). The Plaintiffs may "meet this burden by amending the pleadings or by submitting affidavits." *Id.* (citations omitted).

The Plaintiffs seek a putative class comprising all 6,521 purchasers of the Gender Mentor, including those who received correct gender predictions.[4] (Third. Am. Compl. ¶ 15.) They allege seven categories that contribute to the amount in controversy: monetary damages; consequential damages relating to the purchase and use of the product; damages for emotional distress caused by the Defendants; injunctive relief; attorney's fees and expenses; potential punitive damages; and disgorgement of all income and profit. *Id.* at ¶ 16.

 The amount of monetary damages alleged by the Plaintiffs does not, by itself, equal the CAFA jurisdictional threshold.

Assuming the putative class of 6,521 members would be entitled to receive a 100% refund for the cost of the Gender Mentor product, the total compensatory damages equal $1,793,275.00. Acu–Gen and Wang contend that the 200% guarantee is not available for all of the members for the putative class because a significant number have already received the 200% refund and others purchased the product after May 2006 when the Defendants reduced the guarantee to a 100% refund. (Defs.' Opp. 8–9.) Even if the alleged facts supported a claim that all 6,521 purchasers were entitled to a 200% refund, the total compensatory damages would only equal $3,586,550, far less than the statutorily required amount.

On the other hand, the Plaintiffs have alleged facts regarding out-of-pocket and consequential damages with sufficient particularly to indicate to the Court that is not a legal certainty their claims involve less than the required jurisdictional amount. As an alleged result of the defective Gender Mentor and Wang's statements, class members claim they paid for expenses, including "medical testing, medical treatment, items purchased based upon the guaranteed gender prediction by the defendants, and similar damages." (Third Am. Compl. ¶ 19). The Plaintiffs allege the average of the out-of-pocket damages is approximately $1000 per person. *Id.* Counsel submitted a supporting affidavit that the $1000 average is an accurate calculation based on their work-product gathering information from class members. (Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion to Amend the Complaint ["Pls.' Reply Br."], Barry J. Gainey, Esq. Aff., Ex. A ¶¶ 6–7.) Based on the facts as alleged and supported by

---

4. The Plaintiffs claim that the Defendants have sold additional Gender Mentor products since December. (Third. Am. Compl. ¶ 18.)

The Plaintiffs do not, however, allege an estimate of how many additional purchasers may be included in the putative class.

counsel's affidavit, the out-of-pocket consequential damages for a putative class of 6,521 members would reach a total of $6,521,000. (Third Am. Compl. ¶ 19.) The Court need not consider whether each of the remaining categories of alleged damages independently, or in the aggregate, amount to $5,000,000. Based on the alleged consequential damages alone, the Plaintiffs sufficiently exceed the statutory minimum.[5]

### 3. Jurisdiction under the Magnuson–Moss Act

■ The Plaintiffs also survive a jurisdictional challenge under the Magnuson–Moss Act. Pursuant to 15 U.S.C. § 2310(d)(3), the Magnuson–Moss Act provides that if a warrantor fails to comply with the terms and obligations under the written or implied warranties, consumers can initiate a civil class action in federal court where there are 100 or more named plaintiffs, the amount in controversy of any individual claim is worth at least $25, and the total amount in controversy of the aggregate claims is worth at least $50,000, exclusive of interest and costs. No class action may be brought under the Magnuson–Moss Act, however, "unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e). In additional to providing the warrantor a reasonable opportunity to cure the alleged breach, the statute provides that the named plaintiffs shall notify the warrantor that they are acting on behalf of a class. *Id.* Where the class action is initiated in federal district court, the representative capacity of the named plaintiffs shall be established in accordance with Fed.R.Civ.P. 23. *Id.* The statute's remedial purposes do not lower the stringency of the traditional Rule 23 class certification standards. *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1007 (D.C.Cir.1986).

■ In Count VIII of the Third Amended Complaint, the Plaintiffs allege that the Defendants violated the Magnuson–Moss Act by failing to abide by the terms of the warranties and guarantees, including both express and implied warranties. (Third Am. Compl. ¶ 124.) The Plaintiffs satisfy the statutory definition of "consumer[s]," and the Defendants properly may be considered "warrantors" as defined in 15 U.S.C.A. § 2301. The individual purchase price for the Gender Mentor product is $275. Multiplied by the 198 named plaintiffs in proposed amended complaint, the Plaintiffs allege at least $54,450 is in dispute. Therefore, the Plaintiffs meet the initial jurisdictional requirements under the Magnuson–Moss Act.

Acu–Gen and Wang contend that the Plaintiffs fail to allege a claim under the Magnuson–Moss Act because a) numerous plaintiffs have requested and received the

---

**5.** The Plaintiffs also allege attorney fees should be included in their amount in controversy. This is a matter of first impression in this circuit. Massachusetts General Laws Chapter 93A section 9 provides for the potential recovery of up to treble damages and attorney's fees and costs. In *Spielman v. Genzyme Corp.*, 251 F.3d 1, 10 (1st Cir.2001), the First Circuit court, relying on anti-aggregation principles in Supreme Court precedent before CAFA was enacted, held the projected award of attorney fees to class members under Chapter 93A could not be aggregated for purpose of satisfying the federal jurisdiction amount-in-controversy requirement. Sister circuits examining the issue after CAFA's enactment have held that where the relevant state law statutes authorize the recovery of attorney's fees, CAFA class actions properly may include the attorney's fees in their jurisdictional amount in controversy calculations. *See Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir.2007)(holding that where the relevant state statute provided for attorney's fees, the putative class attorney fees were properly included in the amount in controversy).

200% refund requested and therefore, do not have a viable cause of action for breach of warranty; and b) the Plaintiffs have not, as statutorily provided in 15 U.S.C. § 2310(e), first given Acu–Gen a "reasonably opportunity to cure [the alleged] failure to comply." Attached to Acu–Gen and Wang's brief is an exhibit detailing the alleged refunds requested, and to whom they were distributed. (Defendants Acu–Gen and Wang's Memorandum of Law in opposition to Plaintiffs' Motion to Amend Complaint ["Defs.' Br"], Exhibit B.) Acu–Gen and Wang contend that of the 198 named Plaintiffs in the proposed Third Amended Complaint, 91 Plaintiffs have requested and received refunds from Acu–Gen. (Defs.' Br, Exhibit A, Wang Aff. at ¶ 8.) The Plaintiffs maintain that even if Acu–Gen and Wang are correct, they still have enough named Plaintiffs to survive jurisdiction. Moreover, the Plaintiffs contest the veracity of the refund chart and have submitted two affidavits from Melissa Alberti–Araujo, a named Plaintiff, who avers that despite being included on the refund list submitted by Acu–Gen and Wang, she has not yet received the 200% refund she requested. (Pls.' Reply Br., Ex. B, ¶¶ 3–4.) Furthermore, the Plaintiffs argue Acu–Gen and Wang are raising merit-based rather than jurisdictional challenges.

Acu–Gen and Wang's contention that the Plaintiffs have not given the Defendants a "reasonable opportunity" to address the alleged warranty breach is undermined by the facts, as alleged, in the proposed amended complaint. The Plaintiffs allege that they requested 200% refunds per the express warranty and that in response, the Defendants refused to provide refunds and changed the terms of the warranty and

guarantee. (Third Am. Compl. ¶ 122.) As each of the previous complaints have raised Magnuson–Moss Act claims, Acu–Gen and Wang cannot claim that they are being prejudiced by a last-minute cause of action. *See e.g., Galicia v. Country Coach, Inc.,* 324 Fed.Appx. 687, 688–90 (9th Cir. 2009) (affirming the lower court's denial of a motion to amend a complaint to include a Magnuson–Moss claim filed eight days before the trial). The Plaintiffs' duty to notify ends once they have taken reasonable steps to inform Defendants that duties have arisen under the warranty. *See White v. Holiday Kamper & Boats,* 2008 WL 4155663, at *6 (D.S.C. Sept. 9, 2008) (holding that where plaintiffs allege they contacted defendant via telephone and plaintiffs' counsel mailed notice to defendant's address months before commencing an action, defendant was allowed a "reasonable opportunity to cure" the alleged warranty failure.)

The disputes over the factual record and the challenge to the merits of individual Magnuson–Moss Act claims are not appropriately resolved at this stage.[6] According to *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946), "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." Certification of a class under Magnuson–Moss Act should occur pursuant to traditional Fed.R.Civ.P. 23 standards. "[I]f, in the course of the litigation, some named plaintiffs are dismissed before trial and the number falls below 100, enough plaintiffs with *prima facie* claims must be added to reach 100, or the class must be decertified." *Abraham*

6. *But see Walsh v. Ford Motor Co.,* 588 F.Supp. 1513, 1520–21 (D.D.C.1984) ("[I]n order to comply with the exclusionary purposes of the [Magnuson–Moss] Act, which are designed to limit the numbers and kinds of cases brought in Federal court, [the Court] must look closely at each plaintiff to determine whether he states a claim for relief before he may be counted towards meeting the 100–named plaintiff requirement.")

*v. Volkswagen of America, Inc.,* 795 F.2d 238, 245 (2d Cir.1986) (emphasis in original) (holding that *Bell* governs the initial determination of subject matter jurisdiction in class actions brought pursuant to the Magnuson–Moss Act). Therefore, the Court will not consider a potential challenge to a future class certification upon Rule 23 standards when considering whether the proposed amended complaint alleges sufficient facts to establish that the Court has subject matter jurisdiction.

The motion to amend is not futile and is granted without prejudice to Defendants challenging a class certification in the future.

## IV. CONCLUSION

For the reasons stated above, the Plaintiffs' motion to amend is granted (Docket No. 94).

The Plaintiffs shall file their motion for class certification no later than Friday, August 14, 2009 and the Defendants shall respond no later than Friday, August 28, 2009. The motion for class certification will be heard and determined in September, the case redrawn, and set down for a prompt jury trial. *Massachusetts Eye and Ear Infirmary v. QLT, Inc.,* 495 F.Supp.2d 188 (D.Mass.2007), *aff'd* in part, *vacated* in part, 552 F.3d 47 (1st Cir.2009).

SO ORDERED.