FILED
United States Court of Appeals
Tenth Circuit

October 9, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,
ex rel., SARA LACY,

      Plaintiff-Appellant,

v.

NEW HORIZONS, INC., d/b/a
New Frontier ICF/MR, d/b/a
New Horizons Texarkana TX, d/b/a
New Frontiers, d/b/a Holly House,
d/b/a Horizons General Partnership;
NEW FRONTIERS COMMUNITY
SERVICES, INC.; DONALD
MOORE; CATHY MOORE; MARK
MOORE; CHISOLM COMMUNITY
SERVICES OF OKLAHOMA, INC.;
CINDY LASYONE,

      Defendants-Appellees.

No. 08-6248
(D.C. No. 5:07-CV-00137-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendant New Horizons Inc. (New Horizons) operated nine long-term-care facilities for mentally retarded adults in Oklahoma, and four in Texas, known as Intensive Care Facilities for the Mentally Retarded (ICF/MR).[1]  It employed Sara Lacy as a case manager and Qualified Mental Retardation Professional from June 1999 to June 2004.  After New Horizons terminated her employment, she brought this action under the False Claims Act (FCA), 31 U.S.C. § 3729(a), alleging that the defendant had presented false claims to the government under the Medicare, Medicaid/SSI, and Social Security programs.  She further claimed it terminated her employment in retaliation for reporting these false claims.  The United States declined to intervene.  The district court dismissed her complaint, and she appeals.

**BACKGROUND**

Ms. Lacy's 112-page Second Amendment Complaint (the "Complaint") included allegations that defendant had presented false and fraudulent claims in violation of § 3729(a)(1); used false or fraudulent records in violation of § 3729(a)(2); conspired to get false or fraudulent claims paid in violation of § 3729(a)(3), and terminated her employment in violation of 31 U.S.C. § 3730(h)

---

[1]     Throughout her complaint and her briefing, Ms. Lacy refers inconsistently to "defendant" and "defendants" performing various actions and being liable for various claims.  We refer in this order and judgment to "defendant" in the singular, primarily meaning New Horizons but incorporating the other defendants whenever made necessary by the context.

"because of her lawful acts of initiating, investigating, and reporting the misconduct of the Defendant to employees of the State Regulatory Agency." Aplt. App. at 123 ¶ 135. The district court granted the defendant's motion to dismiss the Complaint, concluding that (1) Ms. Lacy failed to plead her forward billing claims with the particularity required by Fed. R. Civ. P. 9(b); (2) her claims concerning the submission of annual reports and quarterly wage enhancement reports failed to plead fraud with particularity and failed to state a claim under the FCA; (3) her claims concerning substandard care did not present allegations that could serve as the basis for an FCA claim; (4) she failed to state a claim that defendant violated the Medicare anti-kickback statute; (5) her conspiracy claim ran afoul of the intracorporate conspiracy doctrine and failed to allege the conspiracy with particularity; and (6) the reporting of regulatory violations to an Oklahoma state agency was not a report submitted to the government that would support a FCA whistleblower claim.

The district court further concluded that Ms. Lacy's allegations concerning defendant's per diem billing practices came close to stating a claim. It granted her leave to amend her Complaint to flesh out this claim. But she declined to amend and instead requested a final judgment. After final judgment was entered, she filed this appeal.

## ANALYSIS

### 1.  FCA Provisions

The FCA imposes liability, inter alia, on any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]
>
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid[.]

31 U.S.C. § 3729(a) (1994).

The statute further provides protection to employees who suffer retaliation from their employers for lawful acts taken in furtherance of an action under the FCA:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. . . . An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

*Id.* § 3730(h).

## 2. Review Standards

We review a district court's dismissal under Fed. R. Civ. P. 12(b)(6) de novo, *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009), asking whether the plaintiff has stated "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While in general, a civil complaint in federal court need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), this rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

FCA claims, which involve averments of fraud, are held to a higher standard. "[T]he heightened pleading requirements of [Fed. R. Civ. P.] 9(b) apply to claims brought under the FCA." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 228 (1st Cir. 2004). Rule 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud[.]"[2]

---

[2] In supplemental authority filed with this court, Ms. Lacy argues that the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617 (May 20, 2009), has eliminated the requirement that fraud be pleaded with particularity in qui tam actions. We do not agree. First, only a very few of the Act's provisions apply retroactively to her claims. *See id.* § 4(f), 123 Stat. 1625

(continued...)

In reviewing a dismissal pursuant to Rule 9(b) for failure to plead fraud with particularity, we confine our analysis to the text of the Complaint, accepting as true all well-pleaded facts as distinguished from conclusory allegations. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006). We view those facts in the light most favorable to the non-moving party. *Id.* "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and [she] must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* at 726-27 (quotations omitted).

### 3. Forward Billing Allegations

Paragraphs 33 through 42 of the Complaint describe a scheme whereby defendant allegedly submitted bills at the beginning of each month to patients and to the Medicare, Medicaid, and Social Security Administration programs seeking payment for services to be performed for patients during that month. Ms. Lacy alleges this was improper because bills are only to be submitted for reimbursement after services have been provided. *See* Okla. Admin. Code § 317:30-3-8 (prohibiting pre-billing). She further alleges that "[t]hese bills were

---

[2](...continued)
(setting effective dates). Of those provisions expressly made retroactive, none establishes or changes the pleading requirements for an FCA complaint.

submitted for every patient, in all of the nine operating houses in Oklahoma each and every month beginning in June 1999, and continuing at least until April of 2004." Aplt. App. at 26 ¶ 36.

Notwithstanding the fact that Ms. Lacy's allegations concern a fairly specific time period (June 1999 to at least April 2004) and an identified class of patients (all patients in the nine operating homes in Oklahoma), she has supplied no specific details concerning *any particular false claim* for payment submitted (or, to the extent her claims rest on FCA subsections (a)(2) or (a)(3), planned to be submitted)[3] to the government.[4] In *Sikkenga*, we quoted with approval the First Circuit's application of Rule 9(b) to the FCA, which requires that

> a relator must provide details that identify particular false claims for payment that were submitted to the government. In a case such as this, details concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied for each

---

[3] *See United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 46 n.7 (1st Cir. 2009) (applying *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008)).

[4] The allegations in ¶ 41, concerning per diem billing, are dealt with separately, *infra*.

allegation included in a complaint. However, like the Eleventh Circuit, we believe that some of this information, for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

*Sikkenga*, 472 F.3d at 727-28 (quoting *Karvelas*, 360 F.3d at 232-33).

Ms. Lacy contends that her broad language concerning "every patient, in all of the nine operating houses in Oklahoma," Aplt. App. at 26 ¶ 36, during the time period June 1999 to April 2004, coupled with the other information she supplied concerning the mechanics of billing and the persons involved in the billing, is sufficiently particular to satisfy the Rule 9(b) standard and to put the defendant on notice of the particular instances of fraud she alleges. *See* Aplt. Opening Br. at 10-11. We cannot agree. First, no single instance of a particular false claim is alleged that would be representative of the class described. *See United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) (stating relator who "pleads a complex and far-reaching fraudulent scheme" must provide examples of specific false claims that "are representative samples of the broader class of claims."). The Complaint merely alleges in general terms a scheme to bill in advance for patient care, applicable to every patient at defendant's facilities during a period of five years.

Finally, the Complaint provides no details about how the scheme was implemented. It states that employees were directed "to submit bills to the patients and government authorities for vendor payments at the beginning of each month for services to be performed that month," Aplt. App. at 25 ¶ 35, using

-8-

"UB-92 and 1500 Paper forms," *id.* at 26 ¶ 37.  Presumably, some feature of the billing submitted on these forms must have been altered or falsified in order to avoid its being rejected for reimbursement out of hand as an impermissible forward billing.[5]  To assume otherwise is to conclude that defendant submitted patently improper bills for years without making any attempt to conceal its fraud and without attracting even the slightest attention from the agencies assigned to pay them--an implausible allegation that goes unexplained in the Complaint, which neither explains nor provides any specific examples to demonstrate what exactly was altered or misstated on these forms.

In sum, Ms. Lacy's broad-ranging allegations about forward billing are insufficient to meet the requirements of Rule 9(b) with respect to particular false claims.  The district court properly concluded that the forward billing claim was not pleaded with particularity.

### 4.  Per Diem Billing Allegations

Ms. Lacy's per diem billing allegations allege that defendant billed the government for reimbursement at the per diem rate for days after patients died; when patients were absent from the facility and visiting with family; when a patient was in a hospital; and when a patient was moved out of state.  The district

---

[5]     Ms. Lacy provides a blank form used to make adjustments to the UB-92 form, for example, and this form includes a line requiring that the "date of service" be specified.  Aplt. App. at 158.

court identified three paragraphs of her Complaint that establish the primary basis for these claims.

Paragraph 41 alleges that "[o]nce the money was paid, a number of patients died in the middle of the month (including but not limited to Monica Wiebe, Judy Henderson and Charley Bryant); New Horizons, under the direction of Don and Cathy Moore, retained the money for the services for the rest of the month and failed to pay back the patient's family, government or the patient trust account." Aplt. App. at 26-27 ¶ 41. This description answers the "who and what" of the alleged fraud, by identifying specific patients for which overbilling occurred, what was overbilled, and who directed the overbilling. But it omits any details concerning the dates and amounts involved or even which specific government programs were not reimbursed after the alleged patient deaths.

Paragraph 46(a)(ii) alleges that "[a]t the Direction of Defendants Don and Cathy Moore, patients like John Gentry were encouraged to leave the houses for family visits and employees Ronaye Classen and Rachel Bevill-Breeding were instructed to mark the patients as present; on one occasion Charley Bryant was sent to the hospital ER as a John Doe so that they could mark him as being present." *Id.* at 31 ¶ 46(a)(ii). Notwithstanding the identification of patients for whom overbilling allegedly was made, no information is provided concerning the dates or number of times the alleged overbilling occurred and there are no estimates of the total number of patients involved.

-10-

Paragraph 79 alleges that when claims were submitted for payment "the claims were false and the Defendant knew they were false and thereby subject to the remedies available under the FCA. An example of these bills would be Monica Weibe. She was billed until the end of the month of her death and her Christmas holiday visits in 2002. David Scribner was billed through the end of the month after he was dumped in Denton, Texas by the Defendants." *Id.* at 83 ¶ 79. Here, again, information about dates and amounts and which programs were overbilled is missing. We conclude that the overbilling allegations fail to plead fraud with particularity as required by Rule 9(b).

### 5. Allegedly False Records Used to Obtain Payment of Claims

Ms. Lacy also contends that she satisfied the requirements of Fed. R. Civ. P. 8 and 9(b) by pleading facts that show a violation of § 3729(a)(2). She contends that certain records referred to or otherwise relied on in the defendant's claims for reimbursement were "false record[s] or statement[s used] to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). These allegedly false records included

"[records] falsified . . . to reflect compliance when [defendant was] being evaluated by the State for certification between 1999 and 2004[, including] medical charts, doctors['] orders, and time sheets for each facilit[y];

"[records] destroyed . . . which were required by the State, thereby . . . creating and using false records for a specific named patient who had been abused by another patient in early 2004;

"[records not maintained as required] on patients that were abused;

"false time sheets [created] to reflect compliance with . . . staffing requirements;

"falsif[ied] CPR certifications;

"falsified . . . immunization record[s] for TB and Hepatitis; and

"falsified . . . individual patient plans."

Aplt. Opening Br. at 14-15.

To satisfy the requirements of the FCA, such falsifications would ultimately have to be tied to a planned or actual false or fraudulent claim for payment. *See United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 46 n.7 (1st Cir. 2009). But Ms. Lacy makes no attempt to demonstrate the required link. Nor can we discern such a link through examination of the Complaint. None of the citations she provides to her Complaint support the allegations in her brief.[6]

---

[6]     For example, she cites to the Complaint, page 10, ¶ 28(i), to support her claim that named employees falsified records such as medical charts, doctors' orders, and time sheets to reflect compliance when evaluated by the state. Aplt. Br. at 14. But paragraph 28 is actually found on page 9 of the Complaint, has no subparagraphs, and has nothing to do with falsification of the records identified in
(continued...)

Nor do her allegations of false records or statements appear to tally with any of the claims that the district court recognized and dismissed in its final order. It is hard to say just where in the jigsaw puzzle these factual allegations are intended to fit. Ms. Lacy indicates in her statement of issues on appeal, *see* Aplt. Opening Br. at 1-2, that she has abandoned her claims regarding quarterly cost report fraud and fraud resulting from failure to comply with conditions of participation and conditions of certification, logical places for these allegations. This leaves her annual cost report claim, which is where appellees have attempted to pigeonhole these orphan allegations. *See* Aplee. Br. at 22. Ms. Lacy does not contest appellees' characterization of her argument as a cost report claim. Accordingly, we will treat these allegations as part of her annual cost report claim. As such, they fail for the same reason that claim fails generally: the annual cost reports were not claims for payment.

## 6. Annual Cost Report Claims

In her annual cost report claim, Ms. Lacy contends that defendant was required to file annual cost reports to obtain reimbursement for the cost of services provided to Medicare or Medicaid patients. Defendant's employees allegedly shifted onto these reports nonreimbursable expenses such as personal

---

[6](...continued)
Ms. Lacy's brief.

groceries, gas, automobiles, cell phones, liquor, and "consulting services" paid to relatives but not performed.

"A false certification is . . . actionable under the FCA only if it leads the government to make a payment which it would not otherwise have made." *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1219 (10th Cir. 2008). *(*Even for a claim under subsections (a)(2) or (a)(3) there would have to be a connection to a planned claim on the government fisc.) We agree with the district court that Ms. Lacy has failed to show that the annual cost reports that defendant submitted had the required relationship to a payment or reimbursement request necessary to support an FCA claim. While the annual cost reports are mandatory, as the district court found they merely "[c]ollectively . . . establish a basis for evaluation of the reasonableness of the rate paid to the nursing homes and determination of what constitutes an economically and efficiently operated facility." Aplt. App. at 166 (quoting "Oklahoma Nursing Home Cost Report Instructions," at 1, *available at* http://www.okhca.org/WorkArea/showcontent.aspx?id=7267 (visited August 6, 2009)). Thus, the reports would not have led the government to make a payment not otherwise authorized to defendant. The district court therefore properly dismissed Ms. Lacy's annual cost report claims.

### 7.  Anti-Kickback/Self-Referral Claims

In her anti-kickback/self-referral claims, Ms. Lacy charged that defendants Don and Kathy Moore owned and managed defendant New Horizons and that they also owned New Frontiers Community Service, Inc. (New Frontiers), a community-based mental health care service managed by Mark Moore, Don Moore's son.  Mark Moore allegedly used New Frontiers to refer individuals to New Horizons, even when such individuals were ineligible for placement in an ICF/MR.  The Complaint charged that such referral between facilities owned by the defendants violated the anti-kickback provision of 42 U.S.C. § 1320a-7b.  It also charged that defendant engaged in improper self-referral by reporting that patients had been "discharged" and then transferring them to another of defendant's facilities.

Section 1320a-7b(b) prohibits the knowing and willful receipt, offer, or payment of "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind" in return for, among other things, referring individuals to facilities funded by federal health care programs. Assuming arguendo that a violation of this statute gives rise to FCA liability, there is a fundamental problem with Ms. Lacy's contention that defendant violated the statute.  She did not allege *that there was any remuneration made* in exchange for the "referrals."  *See* Aplt. App. at 81-82.

Ms. Lacy argues that defendant's receipt of payment *from the government* under federal health care programs as the result of shuttling patients around satisfies the remuneration requirement. But reading the statute in this way removes the "kickback" requirement altogether. The statute already forbids any payment for referrals to facilities providing services "for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1)(A), (2)(A). In other words, payment or potential payment from government health care programs is already and always required as an element of the offense, but a violation of the statute requires an additional requirement: receipt or disbursement of payment *in exchange for the referral.* It is this additional remuneration that Ms. Lacy has failed to allege.

Although the Complaint mentions only § 1320a-7b, it charges that defendant engaged in "self-referral," which may be a reference to the Stark Act, 42 U.S.C. § 1395nn. This statute prohibits referrals by physicians to health care entities with which they have a financial relationship. The district court found that none of the defendants was a physician to which the Act would apply. Ms. Lacy does not challenge this finding on appeal. We therefore uphold the district court's dismissal of her kickback claims.

### 8. Improper Discharge Claim

Ms. Lacy contends that she has stated a claim for retaliatory discharge under 31 U.S.C. § 3730(h).  As noted previously, the applicable version of that statute provides

> (h) Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

In the Complaint, Ms. Lacy alleges that she was fired after having reported "violations of State and Federal rules and regulations with regard to patient care and safety to the Oklahoma Department of Health."  Aplt. App. at 19, ¶ 19.  She contends that defendant fired her for having made one such report.  *Id.* ¶ 20.  But nowhere does she allege that she was fired for actions taken prior to her termination "in furtherance of an action" under the FCA.  Therefore, she fails to meet the requirements of § 3730(h).

## CONCLUSION

The district court properly dismissed this action.  The claims raised either fail to state a claim or fail to plead fraud with particularity, as required.  The district court's order of dismissal is therefore **AFFIRMED**.

Entered for the Court


Monroe G. McKay
Circuit Judge