MELLOY, Circuit Judge,
Concurring in Part and Dissenting in Part.
I.
I concur with the majority except as to the dismissal of the manufacturing-defect claim and the related issues of the denial of the plaintiffs discovery request and motion to amend. On these issues, I would reverse and remand for limited discovery and the opportunity to amend the master consolidated complaint.
I would hold the specificity requirements of Tivombly must be applied in a practical manner that recognizes the parties’ relative access to information necessary to articulate claims with specificity. Here, as described by the majority and determined by the district court, the parallel state claim that may escape preclusion under § 360k requires the plaintiffs to prove Medtronic failed to manufacture the Sprint Fidelis Leads in compliance with the requirements set forth in the confidential PMA and supplemental PMAs. To apply Twombly rigidly without permitting discovery as to these documents effectively creates an impossible-to-achieve specificity requirement. I do not believe the Court intended Twombly to create this type of insurmountable hurdle. Rather, I believe the application of Twombly must be pragmatic. Here, that means requiring only a degree of specificity that may be achieved without use of the confidential documents. After discovery — an interrelated issue discussed below — a court reasonably and consistently with Twombly may demand more from plaintiffs in the articulation of their claims.
Regarding the discovery request and the motion to amend, I would hold, in the *1210 context of the present case, that it was an abuse of discretion to deny the request and motion. I emphasize that the requested discovery would be quite limited and impose virtually no burden on the defendants. What the plaintiffs seek, in fact, they already possess in redacted form: the PMA and supplemental PMAs. What they require is an unredacted copy of these clearly identified documents that undisputedly rest in the possession of the FDA and Medtronic. This case does not raise the specter of burdensome and speculative discovery proceedings as referenced in Twombly and bears no resemblance to the discovery-related parade of horribles described with rhetorical flare in the defendant’s brief. The plaintiffs here do not seek a fishing expedition in order to discover possible claims, and they have not asked for anything resembling a protracted and expensive discovery process.
The defendants argue the plaintiffs did not ask for discovery until after the district court’s initial grant of the motion to dismiss. The majority states the plaintiffs disclaimed the need for discovery and concludes with no discussion that the district court did not abuse its discretion “in denying ... [the plaintiffs] belated request for discovery.” I disagree. Early in this matter, at least one attorney had strongly urged the court to allow discovery. Later, the plaintiffs represented in a status conference that discovery would not be needed unless the motion rested on information outside the pleadings. By applying Twombly in a manner that requires the plaintiffs to first obtain PMAs and specifically articulate claims through reference to deviations from manufacturing requirements as set forth in the PMAs, the district court necessarily brought the PMAs into the case. Doing so advanced the motion to dismiss beyond the mere pleadings. Accordingly, I view the record as showing that the plaintiffs had indicated discovery would be needed in this exact situation.
Unfortunately, the plaintiffs did not know until after the district court dismissed their complaint that the viability of their manufacturing-defect claims at the pleading stage would rest wholly upon the contents of the PMAs. When this disputed legal issue was clarified through the district court’s application of Twombly in its preemption decision, plaintiffs sought the opportunity to review the documents that were made outcome determinative by the district court’s dismissal order. Only review of these documents could empower the plaintiffs to amend their pleadings in a manner consistent with the district court’s interpretation of the preemption/parallel claim doctrine.
The combination of the rigid application of Twombly and the now-articulated parallel claim exception to § 360k preemption have, in these cases, led to the dismissal of over two hundred potentially meritorious lawsuits on a technicality. I view this as unjust in this evolving and complex area of the law. It is particularly inappropriate where all that is required to avoid this result is the grant of a request for focused discovery that will involve truly de minimis costs. In some case, concerns for efficient case administration may dictate a result like that reached today. Efficiency cannot rule the day, however, when plaintiffs seek only the disclosure of clearly identified documents undisputedly held by the defendants.
II.
Supplemental PMAs impose requirements specific to individual devices based on manufacturers’ submissions to the FDA. Riegel, 552 U.S. at 323, 128 S.Ct. 999. “And while the FDA does not require that a device allowed to enter the market as a substantial equivalent take *1211 any particular form for any particular reason, the FDA requires a device that has received premarket approval to be made with almost no deviations from the specifications in its approval application, for the reason that the FDA has determined that the approved form provides a reasonable assurance of safety and effectiveness.” Id. (internal quotations and citation omitted); see also 21 C.F.R. § 814.80 (“A device may not be manufactured, packaged, stored, labeled, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order for the device.”); id. § 820.70(a) (“Each manufacturer shall develop, conduct, control, and monitor production processes to ensure that a device conforms to its specifications.”).
The plaintiffs allege (mostly in then-amended master complaint) that they were injured because the Sprint Fidelis Leads failed to conform to the device’s specifications. At a general level, this is a classic example of a “parallel” state-law claim because the plaintiffs’ claim does not seek relief based on some duty or requirement specific to the Sprint Fidelis Leads beyond what is imposed by federal law. The district court recognized this type of claim as a “back door for plaintiffs” that was left open by Riegel. See generally Miller v. DePuy Spine, Inc., 638 F.Supp.2d 1226, 1230 (D.Nev.2009) (“Only a departure from such FDA-approved specifications could conceivably escape preemption....”). In general, plaintiffs attempting to the fit into this narrow category nearly always rely on the manufacturer’s submissions to the FDA.[6]
The present plaintiffs do not allege how the Sprint Fidelis Leads failed to conform to FDA-approved specifications. Instead, they assert that they “cannot specify the requirements because filings with the FDA are confidential.”[7] Thus, the discovery issue on appeal is intertwined with the question of the sufficiency of the pleadings. The question with regard to the motion to dismiss, therefore, is whether the plaintiffs must allege that the Sprint Fidelis Leads violated a particular and confidential FDA-approved specification.
The district court held that the plaintiffs’ “conclusory allegation” about FDA-approved specifications “fails to pass muster.” I view this holding as failing to take into account the practical difficulties inherent in situations, like this, where the “crucial information ... tend[s] systematically to be in the sole possession of the defen *1212 dants.... ” Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir.2009) (describing a similar information imbalance in certain ERISA actions). In Braden, our court reversed a dismissal on the pleadings and called for “careful and holistic evaluation of ... factual allegations” where defendants were in sole possession of facts necessary to state claims with particularity. In my view, this “careful and holistic evaluation” should accommodate the possibility of limited discovery when the subject matter at hand makes clear that the discovery burden will be slight.
In Hofts v. Howmedica Osteonics Corp., 597 F.Supp.2d 830, 838 (S.D.Ind.2009), for example, the court refused to use Twombly to cut off manufacturing-defect claims articulated in a manner almost identical to those in the present case. There, in fact, the court commented on the district court’s order from the present case, suggesting that it is “an unusually stringent application of Twombly and Rule 8 of the Federal Rules of Civil Procedure at the motion to dismiss stage.” Id. The court explained:
Manufacturing defect claims are not subject, for example, to the “particularity” pleading requirements of Rule 9. By way of comparison, in Lohr, the Supreme Court reversed dismissal of similar claims, even though “the precise contours of their theory of recovery have not yet been defined,” because it was clear that the plaintiffs allegations “may include claims that Medtronic has, to the extent that they exist, violated FDA regulations.” 518 U.S. at 495 [116 S.Ct. 2240].
Id. In Hofts, the plaintiff “brought claims premised on Howmedica’s alleged failure to manufacture the [device] in accordance with the PMA issued by the FDA.” Id. Ultimately, that court held the allegations — virtually identical to the present allegations — sufficient to state a claim.
I agree with the court in Hofts because its pragmatic approach does not turn Twombly into an insurmountable hurdle for plaintiffs. Importantly, submissions to the FDA for PMAs and supplemental PMAs are confidential, and, as in the present case, redacted copies obtained through Freedom of Information Act requests are not always adequate to supply plaintiffs with the manufacturing requirements critical to articulate a non-preempted claim. If plaintiffs must allege that the defendant violated a particular FDA-approved specification before discovery, then it is difficult to appreciate how any plaintiff will ever be able to defeat a Rule 12(b)(6) motion. In essence, application of Twombly in this manner eliminates the remaining exception to § 360k preemption.
The basic principle I would apply recognizes, simply and fairly, that a plaintiffs pleading burden should be commensurate with the amount of information available to them. This is not an unorthodox approach. See Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 680 (6th Cir.1988) (“Courts have held that the [Rule 9(b) particularity requirement] may be relaxed where information is only within the opposing party’s knowledge. Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant’s control.”) (internal citations omitted). Most of the arguments that would militate against this approach rely upon the risk that discovery will create unnecessary burdens for defendants and permit unworthy plaintiffs to file frivolous suits merely to fish for possible claims. See, e.g., United States ex rel. Joshi v. St. Luke’s Hosp., Inc., 441 F.3d 552, 559 (8th Cir.2006) (rejecting a request for discovery in the context of a qui tarn action and rejecting a request to relax Rule 9(b)’s heightened particularity re *1213 quirements for pleading fraud claims, noting, “The reluctance of courts to permit qui tam relators to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a qui tam plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext to uncover unknown wrongs.” (quoting United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 231 (1st Cir.2004)) (emphasis added)). I fail to appreciate how these concerns relate in any manner to the present case, where all that is needed through discovery is an unredacted copy of the PMAs, where at least some of the plaintiffs have suffered actual and serious injuries, and where other plaintiffs are at heightened risk for future medical intervention.
Regarding the district court’s discovery ruling in particular, some additional facts are helpful to provide the full context for this matter. The defendants argue that the plaintiffs shifted positions following the district court’s initial dismissal of their claims and now seek discovery after having expressly disavowed any need for discovery. I view this as an inaccurate description of the case. The plaintiffs had sought the PMA documents through FOIA requests, but according to them, “the documents the FDA produced were too heavily redacted to provide the specifications that the district court required.” The plaintiffs moved to compel production of unredacted documents or to amend the protective order to allow the FDA to produce the documents without redaction. A magistrate judge denied the plaintiffs’ motion. One day later, the district court issued its order dismissing all claims with prejudice and staying all proceedings pending appeal. The plaintiffs filed a letter asking the district court “to clarify that their time to object to [the magistrate judge’s] Order is stayed along with the rest of this case.” The district court ordered that the stay of proceedings includes the time for the plaintiffs to object to the magistrate judge’s order on compelling unredaction of the FDA documents. Thus, the magistrate judge’s discovery order is not ripe for appeal.
During a status conference on January 28, 2009, plaintiffs’ counsel indicated that they intended to seek leave to file a motion to amend the master consolidated complaint. According to the district court, “Plaintiffs argued strenuously that they are entitled to discovery before moving to amend.... ” The district court denied discovery. The district court, in denying leave to amend and pursue discovery, suggested that the plaintiffs were unclear about the scope of discovery and how they believed the material will help them. However, the order itself demonstrates that the court was aware that the plaintiffs specifically sought to discover the specifications contained in the Sprint Fidelis Leads’ PMAs. Indeed, the plaintiffs have sufficiently alleged that the Leads were defective, they have discovered violations of other FDA requirements, but they cannot allege a violation of an FDA-approved specification without access to Medtronic’s submissions. This is far from “play[ing] Court-sanctioned roulette, hoping that they will hit the discovery ‘jackpot’ and uncover facts to support their claims,” as suggested by the district court and as echoed by the defendants.
The defendants note that the district court stated “Plaintiffs’ lead counsel made clear from the outset of this case that no discovery was necessary in order to resolve the preemption issue.” The majority also makes this point. In fact, the district court rejected the plaintiffs’ attempt to explain the statement in an earlier status conference stating “counsel is attempting to engage in revisionist history by suggest *1214 ing that he left open the door for discovery at the initial status conference.”
Discussing the motion to dismiss, however, counsel did not disavow the need for discovery if the motion was “going to be some sort of broader motion that pulls in information outside of the pleadings.” The attorney who made this statement was subsequently appointed lead attorney, but he was not lead attorney at the time he made the statement. . Another attorney at the same conference suggested, presciently, that discovery was necessary on the manufacturing-defect issues in order to establish an exception to Riegel — and he even said that he could be sued for legal malpractice for failing to request such discovery. All of these circumstances lead me to believe that Plaintiffs’ account of the scheduling conference was not so “revisionist,” and also that it was improper for the district court to rely on this exchange to deprive Plaintiffs of discovery that is seemingly necessary for them to state a claim that will avoid federal preemption.
Finally, regarding the motion for leave to amend, I do not present an exhaustive analysis. I note only that I can find no suggestion of bad faith by the plaintiffs or prejudice to the defendants associated with granting leave to amend. Accordingly, for the reasons set forth above, I would hold denial of the motion for leave to amend and the request for discovery was an abuse of discretion.

. The Sixth Circuit, pre-Twombly, explained that a manufacturer's submissions to the FDA are critical to discerning what requirements are applicable to a medical device:
It is true that in granting approval for a Class III device, the FDA does not set forth the reasons justifying its decision. Impliedly, however, the FDA has relied upon both the PMA submission approved for the original Class III device and the PMA Supplement providing specific information on the proposed modification in question. These specific submissions form the basis of the FDA's approval of the PMA Supplement. Thus, we conclude the specific requirements applicable to the Model 4004M include the entire relevant PMA and accompanying PMA Supplement, rather than certain portions thereof. In the case of the Model 4004M, then, the information submitted to and approved by the FDA in both the Model 4003 PMA and as modified by the Model 4004M PMA Supplement comprise the specific federal requirements applicable to Medtronic’s Model 4004M pacemaker lead.
Kemp v. Medtronic, Inc., 231 F.3d 216, 228 (6th Cir.2000).

. Federal regulations provide that the information about a PMA applicant’s "[mjanufacturing methods or processes, including quality control procedures” generally are not available for public disclosure unless that information has been previously disclosed to the public. 21 C.F.R. § 814.9(h)(1).